# Georgia Home Insurance Co. v. Allen

## *Action on Policy of Fire Insurance.*

1. *Waiver of conditions by insurer.*—Although a policy of insurance stipulates that a breach of its conditions by the insured will render it void, this word is always employed in the sense of voidable; and any conditions inserted in a policy for the benefit of the insurer, may be waived by him.

2. *Waiver by adjuster.*—The adjuster of an insurance company, with full power to make examination, investigation, and adjustment of the loss, has authority to waive the conditions of the policy; and, if the adjuster, after full knowledge of the breach of the conditions of the policy by the insured, enters on an investigation and adjustment of the loss, and treats the policy as valid and subsisting, any defense the company had to the policy by reason of such breach of conditions, will be deemed to have been waived.

3. *Conditions liberally construed in behalf of insured.*—Conditions and duties of the assured prescribed in a policy of insurance, should be liberally construed in favor of the assured, but strictly against the insurer.

[Georgia Home Insurance Company v. Allen.]

4. *Breach of iron-safe clause.*—An iron-safe clause in a policy of insurance, requiring the insured to keep a system of books, and inventory of his stock, which shall be locked in a fire-proof safe at night and at other times when the store is not open for business, is a condition, the breach of which, for want of substantial compliance, will avoid the policy, unless waived by the insurer.

5. *What covered by policy.*—A policy of insurance on a "stock of merchandise, consisting of family groceries, confectioneries, tobaccos, cigars, cases, lamps and scales, and other such merchandise, not more hazardous, kept for sale," etc., covers cases, lamps and scales, whether kept for sale or merely for the use of the store.

6. *Construction of writings; waiver.*—It is the duty of the court to construe all writings introduced in evidence; and when correspondence in evidence is admissible as tending to show the authority of the adjuster of the defendant company, but further than that shows only an effort to reach a settlement by way of compromise, it is error to refuse an instruction in writing that the correspondence does not show a waiver by the defendant of a forfeiture on the part of the plaintiff.

APPEAL from Limestone Circuit Court.

Tried before Hon. H. C. SPEAKE.

The first count of the complaint is as follows: "The plaintiff claims of the defendant the sum of seven hundred dollars ($700.00), with interest thereon, the value of his stock of merchandise, consisting of family groceries, confectioneries, tobacco, cigars, cases, lamps and scales and such other merchandise, not more hazardous, kept for sale, usual to such stocks, while contained in the one story of the brick one-story building, with metal roof, situated on the northeast corner of the public square in Athens, Alabama, which the defendant, on January 5th, 1894, insured against loss or injury by fire or other perils in the policy of insurance mentioned, for the term of one year next thereafter, which stock was destroyed by fire on November 27th, 1894, of which the defendant had notice." The other pleadings and rulings thereon are sufficiently set forth in the opinion. The plaintiff introduced in evidence the policy of insurance sued on. The description of the property insured is identical with that in the first count of the complaint above copied. The fire-safe clause is substantially set forth in defendant's plea to the second count, as shown in the opinion. These are the only provisions of the policy presented by the

assignments of error. The bill of exceptions states: "It was shown that Geo. G. Adams was the authorized adjuster of the defendant company, sent by it to adjust the loss." The plaintiff's testimony tended to show that on the invitation of Adams, he carried his books—bill book, cash book, and ledger—to the latter's room in the hotel. That Adams asked if he had no journal, and plaintiff told him he did not, that he had a blotter, which was destroyed by the fire, and that he had a few sales on it. That Adams proceeded without objection to examine the books produced, to strike out improper bills, to estimate, without suggestion from plaintiff, the amount of missing sales, and of goods used by himself and family, and made no objection to the missing sales or to the absence of the blotter. That when he reached the items of fireworks, Adams stopped and said the policy was not worth the paper it was written on. The plaintiff testified against the defendant's objection that the cases, lamps, and scales mentioned and embraced in the policy were the ones used in the store, and not for sale. The evidence further tended to show that the amount of goods bought and sold, and stock on hand and the estimated amount of missing sales and of goods used by plaintiff were figured out. That Adams then asked plaintiff to make a proposition for a cash settlement, and he would advise the company to accept or reject it. Plaintiff made a proposition, which was later withdrawn. That Adams requested plaintiff to furnish him with a Georgia Home policy before he left Athens, but plaintiff declined after consulting counsel. Defendant's testimony tended to show that during the interview in the hotel, when it was discovered that there were missing sales, and a lost book, Adams refused to go further with adjustment, unless plaintiff would agree that by so doing he would not waive any right of the company on the policy. That plaintiff agreed to this before he would proceed. The letters introduced in evidence and made the basis of third assignment of error, are substantially as follows: George G. Adams, adjuster, to J. W. Allen, December 9th, 1894: "You promised to send me a copy of written and printed form attached to Ga. Home policy. I have not, as yet, received the promised paper. Be kind enough to let me have this paper." Allen to Adams, December 10th: "Yours received, the copy of

the policy I promised you was in connection with the proposition I made you for cash settlement. As the proposition was not accepted, and as you alleged you had no authority to bind the company, I supposed the proposition entirely off." Adams to Allen, December 11th: "Yours of the 10th rec'd. I explained to you fully why I wanted copy of the Ga. Home policy. If you see fit not to furnish it, I have nothing more to say just now. You have the policy, and it points out what shall be done in case of a loss, by fire. I was waiting for this promised paper before submitting the proposition to the company." Wm. C. Coart, secretary, to Ben Lee Allen, Dec. 18th: "Replying to your favor of the 10th inst., we beg to say that Mr. George G. Adams, of Birmingham, is fully authorized to settle our loss under No. 158683, and we will thank you to so notify the assured. The matter was placed in his hands, as it was impossible for Mr. Kimball to give it attention as promptly as was desirable. At your request, we hand you herein blank proof of loss, but in furnishing you this paper we neither admit nor deny any liability under our policy, and await adjustment of the matter." Adams to Allen, Dec. 24th, acknowledges receipt of correspondence referred to him, says plaintiff seemed to misunderstand his duties, etc., and continues: "I am simply sent to a loss to ascertain the amount of the loss of the assured and to see if the assured has complied with his part of the contract. If I find that the assured has complied fully with his part of the contract, it is then my duty to ascertain the amount of the loss and report same to the companies. If, on the contrary, I find that the assured has not complied with his part of the contract, it is my duty then to refer the matter to the companies who sent me there and ask for further instructions, and to take no action until I receive such instructions. If you will remember when I was there, a question came up that compelled me to refer the matter of settlement to the companies, which I promised to do, and which I did. I called your attention to the fact that you had not carried out your part of the contract, and stated that if, under the circumstances, you had any proposition to make to the companies as to a compromise settlement, I would submit the same for you, with my recommendation to accept or decline it, as I saw fit for them to do. In your case I in-

tended to ask them to accept your proposition to compromise the matter, but you did not give me time to do so before you withdrew your proposition, if I do not misconstrue your letter. If I construe your letter correctly, please advise me, and if I do not, advise me also, and I will fix up the necessary papers for your signature." Adams to Allen, January 1st, 1895: "Replying to your favor of the 26th, ult., will state that if you desire to have an interview with me in reference to your loss by fire, you will find me at my office in Birmingham. The companies have already gone to the expense of sending an adjuster to Athens, and received a proposition from you to settle this matter by compromise, which you have seen fit to withdraw, and the companies do not propose to go to the expense of sending an adjuster to Athens a second time to make presents of their money on a voided contract." J. B. Kimball to Ben Lee Allen, January 8th: "Your letter handed me on my arrival to-day. I trust that what you say will not materialize. Yet the loss having been placed in Mr. Adams' hands, I deem it necessary that he handle it without my interference. It would be unusual for such a course to be pursued by me, and I beg that you will excuse me this time." Wm. C. Coart, secretary, to J. W. Allen, January 17th: "We are in receipt of yours of the 12th, together with papers, which we have forwarded to our special agent, Mr. Kimball, who will give the matter such attention as it deserves." J. W. Allen to J. B. Kimball, Jan. 22d: "Your favor of 17th to hand to-day. I return the printed forms as an accommodation to you, and is not to be construed as any admission of liability on my part. I have waited and hoped for a private settlement of my loss out of court, but Mr. Geo. G. Adams indicated that my policy in your company was void. I suppose that is the position of your company; hence, your company refuses to make any adjustment, or effort at adjustment, with me. Please advise me if I am mistaken." J. W. Allen to Adams, February 1st, (In answer to letter of 28th January, not offered). Purports to amend proof of loss by striking out "lamps, scales, and cases," and giving estimate on goods taken from the stock for family use; and goods sold from October 21st to November 1st, and from November 22d to November 27th, the time not shown by the books on hand. He concludes: "I am glad to find

that your principal has concluded that my policies are not voided, as formerly you wrote me." Adams to Allen, February 9th: Relates to efforts to have a conference, and says he will try to go to Athens, "and we, perhaps, can arrange our matters. I hope so at least." Allen to Adams: "New Orleans, February 19th, 1895: Your letter of 9th was forwarded to me, and reached here 18th inst. In reply will say, am sorry we did not meet. Now, in reference to our matters, I left my three policies with Mr. R. A. McClellan, and he is my agent. I may not return to Athens till the April term of court, and not then unless I am forced into a suit. So I leave the question to you, as agent of the companies. If you want to settle out of court, make me a proposition. Your first proposition of $500.00 is out of the question, and would not be considered by me. You may wire me your best offer on the three policies of $1,000.00, and you will find me as reasonable as I can be, with justice to myself. Of course, no offer would be binding on either of us, unless a trade was made—in that case you would put up the cash, and I would receipt the policies. Otherwise we will both incur the expense and worry of a suit. I leave New Orleans on February 26th. So it may be necessary to communicate by wire if a settlement is in sight." The other facts sufficiently appear from the opinion. The court refused the following charges requested in writing by the defendant: "1. If you believe the evidence, you will find that the plaintiff did not comply with the terms of the iron-safe clause. 2. Under the evidence in the case, I charge you that the plaintiff is not entitled to recover for the show cases, lamps and scales. 4. You cannot find that the defendant waived any forfeiture of the policy, if there was such forfeiture, by merely sending blank proofs of loss to the assured at his request, although the defendant then knew that there had been such forfeiture. 5. If you believe all the evidence, you will find that there has been a breach of the covenants contained in the 'iron-safe clause,' which defeats the plaintiff's right to recover in this action, unless the plaintiff has satisfied you by the evidence that the defendant, or its agent, waived such forfeiture with full knowledge of such forfeiture. 6. I charge that none of the letters introduced in evidence, nor all of them taken together, show any waiver by the defendant of any

breach or breaches of the conditions or covenants of the policy by the plaintiff, if you find that there was such breach."

JOHN LONDON, and ALEX T. LONDON, for appellant. There is abundant authority for the proposition that an adjuster, not being a general agent, cannot bind his principal by a waiver, unless it is shown to be within the scope of the agency.—*Weed v. London & Lancashire Ins. Co.*, 116 N. Y. 106; *Steen v. Niagara Fire Ins. Co.*, 89 N. Y. 315; *Pachner v. Phoenix Insurance Co.*, 65 N. Y. 195, 207; *Walsh v. Hartford Insurance Co.*, 73 N. Y. 5; *Marvis v. Universal Life Ins. Co.*, 85 N. Y. 278, 283; *Everett v. London & Lancashire Ins. Co.*, 142 Pa. 332; *Messlebach v. Norman*, 122 N. Y. 578; Ostrander on Fire Insurance, p. 201 *et seq.; Queen Ins. Co. v. Young*, 86 Ala. 424, 432; *Phoenix Ins Co. v. Copeland*, 86 Ala. 551. 2. A mere adjustment of the loss, without a promise to pay the amount ascertained, does not estop the insurer from setting up breaches of conditions.—Wood on Fire Ins. (2d Ed.), 450, 482; *Brown v. Commercial Ins. Co.*, 86 Ala. 189. 3. When the facts set up as a waiver do not constitute an estoppel, the waiver must have a consideration to support it.—2 Biddle on Ins. 1070; Ostrander on Ins., pp. 79, 762; 2 Wood on Ins., 452; *Haggerty v. Elyton Land Co.*, 89 Ala. 428, 434; *Brink v. Ins. Co.*, 80 N. Y. 108, 112; *Goodwin v. Ins. Co.*, 73 N. Y. 480; *Prentice v. Ins. Co.*, 77 N. Y. 483. 4. The "iron-safe clause" is valid and a warranty.—Wood on Ins., 179; *Southern Ins. Co. v. Parker*, 32 S. W. 507; *Goldman Ins. Co.*, 19 So. Rep. 132; *Farmer's Ins. Co. v. Bates*, 60 Ill. App. 39; *Palestine Ins. Co. v. Brown*, 34 S. W. 462; Ostrander on Fire Ins. (2d Ed.), 299. 5. Breach of a promissory warranty avoids the policy, irrespective of its materiality.—*McKenzie v. Scot. W. Ins. Co.*, 44 Pa. Rep. 922; *Cogswell v. Chubb*, 36 N. Y. 1076; *Graham v. Ins. Co.*, 87 N. Y. 69; *Imperial Ins. Co. v. Coosa County*, 151 U. S. 452; Ostrander on Fire Ins., 142, p. 404, and 139, p. 396; *Royal Ins. Co. v. Lubilsky*, 86 Ala. 530. 6. Unless an express or implied intention to waive is shown, a waiver cannot arise. *Findeisen v. Ins. Co.*, 57 Ver. 520; *Dole v. Ins. Co.*, 95 Tenn. 38; May on Ins., 506, 507; Bigelow on Estoppel, 660-663; Ostrander on Ins., pp. 743, 762; 2 Biddle on

[Georgia Home Insurance Company v. Allen.]

Ins., 1149; *Briggs v. Fireman Ins. Ass'n,* 65 Mich. 652; *New Orleans Ins. Ass'n v. Matthews,* 65 Miss. 301; *Freedman v. Fire Ass'n,* 168 Pa. St. 248; 32 Atl. 39; *Turnbull v. Ins. Co.,* 34 Atl. 875; *Ins. Co. v. Wilkinson,* 13 Wall. 233; *Boyd v. Vanderbilt Ins. Co.,* 90 Tenn. 212; *Armstrong v. Ag. Ins. Co.,* 29 N. E. 991.

McCLELLAN & McCLELLAN, *contra.*—The action of the trial court in overruling appellant's demurrer to appellee's replication is overwhelmingly sustained by all respectable authority.—86 Ala. 424; 58 Ala. 476; 110 Ala. 201; 44 Cen. Jour. 174; 5 Am. St. Rep. 233; 7 Am. St. Rep. 495; 19 Am. St. Rep. 723; 23 Am. St. Rep. 62; 104 Ala. 176; 31 S. W..Rep. 117; 21 S. E. Rep. 487; 67 Fed. Rep. 577; 33 Pac. Rep. 1130; 32 Pac. Rep. 458; 35 Atl. Rep. 227; 34 N. E. Rep. 553; 52 N. W. Rep. 397; 45 Mo. App. 46; 51 N. W. Rep. 987; 53 Am. St. Rep. 521; 32 Atl. Rep. 39; 168 Pa. St. I., 249; 15 S. E. Rep. 562; 14 S. E. Rep. 923, 672; 26 Pac. Rep. 410; 13 S. E. Rep. 77, 236; 66 N. W. Rep. 136; 65 N. W. Rep. 742; 33 Atl. Rep. 731; 2 Am. Law Reg. & Review, N. S., October, 1895, p. 645, *et seq.* A substantial compliance with the provisions of the policy as to a set of books is sufficient. *Western Assur. Co. v. McGlathery,* 22 So. Rep. 104; 94 Ga. 785; *Assur. Co. v. Redding,* 68 Fed. Rep. 708; 29 S. W. Rep. 218; 7 Am. & Eng. Encyc. of Law, 1045; 18 So. Rep. 86, 928; 25 So. Rep. 1067; 58 Ark. 565; 97 Ga. 44; 21 S. E. Rep. 1006; 35 S. W. Rep. 1060; 36 S. W. Rep. 590, 591. The policy will be liberally construed in favor of the insured, and strongly against the insurer.—86 Ala. 424; 22 Am. St. Rep. 324; Flanders, 223, 224; 1 May. (3d Ed.), 162; 18 Brad. 216; 111 U. S. 335; 120 U. S. 183. Forfeitures relied on to defeat an insurance policy are offensive to justice, to morals, and to law. Flanders, 209, 210; 86 Ala. 424; 106 Ala. 651; 104 Ala. 176; 58 Ala. 476.

HARALSON, J.—The defendant took issue on the first count in the complaint, and also on the second count, but filed a special plea to the second.

The second count alleged—after setting out the insurance and loss, as averred in the first count, and that the defendant had notice thereof—"that soon after the fire the defendant, by its agent, visited, investigated and ex-

amined .the scene of the fire, and thoroughly informed itself of the loss and damage by the fire, and waived formal proof thereof by the plaintiff, and failed to make payment," etc.

The special plea to this count sets up, that the assured "covenanted and agreed to keep a set of books, showing a record of business transacted, including all purchases and sales, both for cash and credit, together with the last inventory of said business; and further covenanted and agreed to keep such books and inventory securely locked in a fire-proof safe at night and at all times when the store mentioned in the written policy is not actually opened for business, or in some secure place not exposed to a fire which would destroy the house where said business is carried on, and in case of loss the assured covenants to produce such books and inventory, and in the event of a failure to produce the same, this policy shall be deemed null and void," etc. Appropriate breaches of the covenants, as set up in this plea, were averred. The defendant also pleaded a third plea, to which the plaintiff replied, but as no question is raised as to the matters set up in said plea, and the replication thereto, in the assignments of error by or in the brief of counsel for appellant, it is unnecessary to notice them.

The plaintiff replied to the second plea, in substance, that immediately after the fire, and before suit, the defendant sent to the scene of the fire and loss one Geo. G. Adams, with full power and authority to make examination, investigation and adjustment of the loss and damage under the policy; that said adjuster did then and there make such examination and investigation as to the fire and loss, and after being fully informed as to how and when, in every particular, the plaintiff had violated the terms and conditions of the policy, if he had violated them at all, recognized and treated the policy as valid and binding, and entered into negotiations and dealings with the plaintiff for the settlement and adjustment of the loss and damage, in consequence of which the plaintiff, of necessity, incurred much trouble, expense and lawyer's fees in the premises, and that finally, before this suit was brought, the said adjuster declined and refused to go on with and make such settlement and adjustment, on the sole ground that the policy was

void, because the plaintiff had kept, used or allowed on the premises, or in the stock of goods in controversy, hazardous or combustible materials, prohibited by the policy, by all of which defendant, by its agents, waived and abandoned all the defenses it had to this suit, based on the second plea.

The defendant demurred to this replication, and the demurrer was overruled. To this ruling, we advert hereafter.

The defendant thereupon filed a rejoinder to this replication on grounds, in substance that said adjuster, after he had entered on the examination and investigation of said loss, for the first time discovered that there had been a breach of the warranties and conditions in said policy, and he then and there refused to proceed with said examination or adjustment, unless and until the said plaintiff consented and agreed that by proceeding with said examination and investigation the said Adams, the adjuster, and the said defendant, should not be held to have waived any right or defense which might be available to said defendant by reason of any such breach or breaches, and that plaintiff then and there agreed and consented, that the further examination or adjutsment of said loss by said Adams should not be taken or held as a waiver of any right or defense the defendant might have against said policy, and said examination as continued by said Adams under and in consequence of said consent and agreement, and not otherwise.

The plaintiff demurred to this rejoinder, and the demurrer was overruled. Issue was then taken on said rejoinder.

From the foregoing it appears, that the real issues to be tried were, 1st, on the plea of the general issue, and 2d, on issue joined on defendant's rejoinder to plaintiff's replication to the second plea, on which plea defendant also joined issue. Inasmuch as the first count was proved without conflict of evidence, the issue is narrowed to the inquiry, if defendant waived the iron-safe clause, as set up in plaintiff's replication to the 2d plea.

1. The first assignment of error is, that the court erred in overruling defendant's demurrer to plaintiff's replication to the 2d plea. The first objection by demurrer was that it was not shown by the replication that

Geo. Adams had power or authority to waive a forfeiture of said policy by a breach of warranty and condition therein. This ground is in direct contradiction of the averments of the replication, that the defendant sent Geo. Adams to the scene of the fire, immediately after it occurred, with full power and authority to make examination, investigation and adjustment of the loss. And it may be added just here, that it was shown in proof, without conflict, that Adams was the authorized adjuster of the defendant company. A general agent, with the authority of this adjuster, may waive the performance of the conditions of the policy.—*Liverpool & L. & G. Ins. Co. v. Tillis,* 110 Ala. 201; *C. C. Ins. Co. v. Caldwell,* 95 Ala. 77; *Queen Ins. Co. v. Young,* 86 Ala. 424; 2 Biddle on Ins., §§1070, 1073; 2 Wood on F. Ins., §§408, 452; 1 Joyce on Ins., §§397, 437, 439.

The 2d and 5th grounds, clearly untenable, were, in substance, that the policy had become void and of no effect, by reason of the breach of its condition, and said adjuster could not by any act of his revive and restore or give effect to said policy. Though a policy usually stipulates that breach of its conditions on the part of the insured will render it "void," this word is always employed in the sense of "voidable;" and any condition inserted in a policy for the benefit of the insurer may be waived by him.—2 Biddle on Ins., §1084, and authorities in n. 2; see also, *Sherman v. Niagara F. Ins. Co.,* 46 N. Y. 326; *Titus v. Glens F. Ins. Co.,* 81 N. Y. 410 (and the authorities cited in these two cases), where the question receives elaborate consideration.

The 3d ground is in direct contradiction of the averments of the replication, which shows that the adjuster entered on the examination and investigation as to the fire and loss, after being fully informed as to how and when, in every particular, the plaintiff had violated the terms and conditions of the policy, if he had violated them at all.

The 4th ground is immaterial, and no answer to the replication. It is of no moment that the company was not informed of any alleged breach of the policy by plaintiff, *before* it sent its adjuster to investigate the loss. Any defense the company had to the policy, will be deemed to have been waived, if the adjuster, with the powers this one is alleged to have had, entered on an in-

vestigation and adjustment of the loss, and treated the policy as valid and subsisting, *after* full knowledge of any supposed violation of its terms by plaintiff, as is alleged he did.

2. The second error assigned is, in that the court overruled defendant's objection to the question propounded to plaintiff, when being examined as a witness in his own behalf, namely, "Did he (Adams), or not, during the investigation and adjustment of the loss, or previous to that time, make a demand upon you for the proofs of loss, until some time after he had looked into the matter?" The question called for proof not immaterial to the consideration of the other point in dispute, as to whether or not the alleged forfeiture was waived, as it is averred it was in the replication. It is there averred, as we have seen, that the adjuster was fully informed as to whether plaintiff had violated the conditions of the policy, before he entered on the investigation of the loss; and plaintiff's proofs tend to show, that he treated any violation of the iron-safe clause as waived, until he ascertained that plaintiff had kept fire-crackers or such like combustibles in store, and then he refused, for that reason alone, to proceed further with the adjustment. The question was not immaterial, for it bore on the particular waiver of forfeiture at issue.

3. The letters admitted in evidence, against defendant's objection, the basis of the third assignment of error, certainly tended to show the authority of the adjuster to make a settlement, and to waive the performance of the conditions of the policy, which were disputed facts in the case.

4. The first charge requested by defendant was properly refused. It was calculated to mislead the jury, for whether the plaintiff complied with the iron-safe clause or not, was not the question for decision. The question was, admitting that he did not comply with that clause, whether his non-compliance had been waived or not. Nor was there error in refusing the third charge. The matter predicated occurring after the alleged waiver of conditions was proper for the determination of the jury under the evidence, which the charge would have withdrawn.

5. The second charge was properly refused. "Cases, lamps and scales," were covered in terms by the policy

under the head of *"Mercantile."*. The premium on these articles, whether kept in stock for sale, or merely for the use of the store, was paid by the insured, and the company cannot, after this, dispute its liability for them. The fact that plaintiff afterwards admitted they were not kept for sale, and should be stricken from his inventory of loss, only shows that he was mistaken as to the liability of the company. It would be a very strict and illiberal construction of the policy to hold that the company, on a technical construction of the language employed, was not liable. The intention of the parties that these articles were to be covered, is clear. We should indulge a liberal construction in favor of the assured, and not a very strict and technical one in favor of the insurer.

6. It is well settled that an iron-safe clause, such as the one contained in this policy, which the insured covenanted to keep, is a condition, the breach of which will avoid the policy, but that it is one that may be waived, like any other conditions.—3 Joyce on Ins., §§2063, 2064. The author, after referring to the authorities on the subject concludes: "In a Federal case it is held a substantial compliance is sufficient under the 'iron-safe clause,' requiring a set of books and an inventory to be securely locked in a fire-proof safe at night, and at all times when the store is not actually open for business, or in some secure place, and that, in case of loss, assured will produce said books and inventory; such a clause is a condition subsequent only, and a literal, exact fulfillment is unnecessary. This decision certainly seems more in accord with the actual intent of the parties, and with justice and reason of the law, and with the tendency of the decisions, than a construction requiring an exact and literal compliance."—3 Joyce on Ins., §2063; *Western Assurance Co. v. Redding*, 15 U. S. C. C. A. 619, 68 Fed. Rep. 708.

It has come to be well settled, also, that conditions and duties of the assured prescribed in a policy of insurance, should be liberally construed in favor of the assured, but strictly against the insurer.—*Piedmont & A. L. I. Co. v. Young*, 58 Ala. 476; *Tubb v. L. &L. & G. Ins. Co.*, 106 Ala. 651, 659.

In seeming recognition of these principles, the defendant requested the fourth instruction to the jury. The

[Georgia Home Insurance Company v. Allen.]

plaintiff's own evidence showed, without conflict, that he had not made even a substantial compliance with his covenants of the iron-safe clause of his policy. He testified that he made entries of sales upon a pocket memorandum book, and when he got time he would transfer these entries to the blotter, and from the blotter to the ledger; that he made these transfers of entries once a week probably, and sometimes oftener; that at the time, the four last days' sales had not been transferred to the ledger, and he had lost his pocket memorandum book, and the blotter had been left on his desk the night of the fire, which he sometimes did, and it had been destroyed by the fire; that the blotter was the only book in which he made entries of goods bought and sold on credit; that he made transfers from the blotter to the ledger, sometimes once a day, sometimes in three -days, and some times not till the end of the week. He also swore that the blotter showed the amount of the goods used out of the store by himself and family for a part of the time, but that for the months of September, October and November, 1894, he made no entries in the blotter or elsewhere of the goods or cash used out of the store by himself and family, and the adjuster was left to calculation merely as to these items omitted from the ledger. The object of the iron-safe clause is to enable the insurer, in case of a fire, to arrive more accurately than he otherwise would be able to do, at the exact amount of the loss. We are unable, therefore, according to plaintiff's own undisputed showing, to say that he complied substantially, even, with the requirements of this covenant. This was sufficient to defeat a recovery by him, unless the jury was satisfied from the evidence, that the defendant, or its agent, with full knowledge of the forfeiture, waived it. This is all that the fifth instruction asked, and it should have been given.

The letters referred to in the sixth refused charge of defendant, were for the construction of the court. We have examined these letters carefully, and fail to find anything in any or all of them to show a waiver by defendant of a breach of the conditions and covenants of the policy by the plaintiff, and the charge was, therefore, a proper one, and should have been given.

Reversed and remanded.