W. H. TILLIS, *Plaintiff in Error*, v. THE LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY, A FOREIGN CORPORATION ORGANIZED UNDER THE LAWS OF GREAT BRITAIN, AND DOING BUSINESS IN THE STATE OF FLORIDA, *Defendant in Error*.

1. A demurrer does not lie to a declaration because it claims other or greater damages than the case made legally entitles the plaintiff to recover, demurrer not being the proper pleading by which to test the extent of recovery.

2. Chapter 4173, act approved June 2nd, 1893, authorizing the recovery of reasonable attorneys' fees against life and fire insurance companies in suits upon policies issued by them, is not in contravention of section 1, Declaration of Rights, nor section 1, art. XIV, Constitution of the United States.

3. The execution of a policy of insurance under seal is properly denied by the plea of *non est factum,* and a plea to an action upon such policy "that defendant did not covenant with plaintiff as alleged," being inapplicable, should be stricken on motion.

4. A departure in pleading is a matter of substance and ground for general demurrer.

5. In declaring upon an insurance policy it is not necessary to allege performance of promissory warranties or conditions subsequent but only of conditions precedent which may under section 1045, Revised Statutes, be by general averment. Breaches of promissory warranties and conditions subsequent are matters of defense to be pleaded by the defendant, and it is not necessary that the plaintiff anticipate such defenses and negative them by averring performance in the declaration.

6. The "iron safe clause" usually found in fire insurance policies upon stocks of merchandise which requires the assured to take and preserve an itemized inventory of stock and to keep a set of books, and to keep such books and inventory securely locked in a fire proof safe at certain times, or in some place not exposed to a fire that would destroy the building containing the stock of merchandise, and provides that failure to take the inventory shall render the policy void and that in the event of failure to produce the set of books and inventory for the inspection of the company, the policy shall become null and void and such failure shall constitute a perpetual bar to any recovery thereon, is a promissory warranty in the nature of a condition subsequent. A breach of such clause is a matter of affirmative defense to be set up by plea, and not a condition precedent, performance of which is required to be averred in the declaration, and hence a replication alleging a waiver of such clause or of a forfeiture accruing upon a breach thereof, is not a departure in pleading, although the declaration sets forth the iron safe clause and avers generally the performance of all conditions precedent.

7. Upon the happening of a total loss under a fire insurance policy upon a stock of merchandise, the assured gave immediate notice to the company who by its agent proceeded to adjust the loss. After knowledge of a forfeiture caused by failure of the assured to comply with the requirements of the "iron safe clause" the company by its agent made an adjustment of the loss, expressed itself satisfied concerning it, found that the assured had sustained a loss far in excess of the sum insured and thereupon then and there agreed and promised to pay the insured the amount of money secured to be paid by the policy. *Held,* that the forfeiture was waived, and the company could not thereafter avail itself of such forfeiture to defeat collection of the money agreed to be paid by the policy.

8. A clause in an insurance policy that "the use of general terms or anything less than a distinct specific agreement clearly expressed and endorsed on this policy shall not be construed as a waiver of any printed or written condition or restriction therein" may itself be waived, and if the company adjusts a loss and promises to pay the policy after knowledge of a forfeiture accruing by reason of the breach of a promissory warranty therein on the part of the assured, it will be bound nothwithstanding the fact that such waiver was not endorsed on the policy. The adjustment and unconditional promise to pay the loss

with full knowledge of the forfeiture, with no reservation that the waiver was to be endorsed upon the policy, will bind the company to such waiver, notwithstanding the clause referred to.

This case was decided by the court *En Banc*.

Writ of error to the Circuit Court for Alachua county.

## *Statement.*

In August, 1897, plaintiff in error began an action against defendant in error in the Circuit Court of Alachua county. The declaration, containing one count, alleged that defendant issued its policy of insurance under seal to plaintiff, whereby it insured plaintiff in the sum of $1,800 against loss or damage by fire, upon his stock of general merchandise while contained in a certain store building at Rochelle, for the period of one year from September 7, 1896. The declaration set forth the policy at length and alleged that plaintiff at the time it was issued, and from thence until the happening of the loss and damage, was the sole and absolute owner of the property; that on February 2, 1897, the property insured was totally consumed and destroyed by fire, whereby plaintiff sustained loss and damage to the property to the amount of $2,886.13; that forthwith, after the happening of said loss, plaintiff gave notice thereof to the defendant, and the defendant through its agent came to where said property was destroyed, made an adjustment of said loss, expressed itself through said agent to be perfectly satisfied concerning said loss; found that plaintiff had sustained a loss of $2,886.13, and then and there agreed and promised to pay plaintiff the amount of money named and secured in said policy, to-wit: $1,800.

The declaration also alleged that plaintiff had kept and performed all things in said policy contained on his part to be kept and performed. and although all conditions had been performed and fulfilled by him and all events and things

had happened to entitle him to a performance by defendant of its contract of insurance, yet the defendant, though often requested, had not paid plaintiff the sum due under said policy on account of the loss sustained, or any part thereof, but refused to do so.

Attached to and made a part of the policy as set forth in the declaration was what is known as the "Iron Safe Clause" in the following language: "The following covenant and warranty is hereby made a part of this policy: 'First. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within 30 days of issuance of this policy, or this policy shall be null and void. Second. The assured will keep a set of books which shall clearly and plainly present a complete record of the business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory as provided for in first section of this clause, and during the continuance of this policy. Third. The assured will keep such books and inventory, if such has been taken, securely locked in a fire proof safe at night, and at all times when the building mentioned in this policy is not actually open for business, or failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building. In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon.' "

Defendant demurred to the declaration, but the demurrer was overruled, and thereafter plaintiff by leave of the court amended his declaration so as to claim an attorney fee of $190, in addition to the $1,800 claimed as damages for loss on the property.

The defendant demurred to the declaration as amended, the sixteenth, seventeenth and eighteenth grounds thereof being addressed only to the amendment, those grounds being in substance that the amendment was based wholly on State legislation, *viz*: Chapter 4173, acts of 1893, and that such legislation is in contravention of section 1, Declaration of Rights, Constitution of 1885, as to equality before the law, and in constravention of section 1, Article XIV, Constitution of the United States, in that it operates to deprive defendant of property without due process of law, and to deny defendant the equal protection of the laws. At the same time defendant moved to strike the amendment to the declaration upon the same grounds.

On February 26, 1898, the court made an order which, after reciting that the cause was submitted upon the defendant's demurrer to the amendment of the declaration, is as follows: "It seems to the court that the demurrer to the amendment of the declaration is well taken, and it is, therefore, considered and ordered that the said demurrer be and the same is hereby sustained, and said amendment of the declaration is stricken."

On March 11, 1898, the defendant filed eleven pleas, the first two of which were stricken upon motion of plaintiff. The others are substantially as follows: 3rd. That the alleged deed is not its deed.

4th. That this defendant did not covenant with plaintiff as alleged.

5th. That defendant never, through its agent or otherwise, made any adjustment of said loss, or expressed itself, through its agent, or otherwise, satisfied concerning said loss as alleged.

6th. That defendant never then and there or at any other time or elsewhere agreed and promised to pay plaintiff the sum of $1,800, or any amount as alleged.

The seventh, eighth, ninth, tenth and eleventh pleas each begin with the statement that "it is not true as alleged

that plaintiff kept and performed all things in the policy contained on his part to be kept and performed; on the contrary, plaintiff did not keep and perform the certain covenant and warranty in said declaration styled the iron safe clause in the particulars, to-wit," and assign separate breaches of that clause as follows: 7th. That plaintiff did not keep said set of books so as to clearly and plainly present a complete record of the business transacted, including all purchases, sales and shipments both for cash and on credit, as in said provision set forth.

8th. That the plaintiff had taken an inventory of said stock within twelve calendar months prior to the date of said policy, and did not take the inventory within 30 days of issuance of said policy, but nevertheless the plaintiff did not keep such a set of books from the date of said inventory as provided for during the continuance of said policy.

9th. The plaintiff did not keep the said last preceding inventory which in fact had been taken during the year next preceding the said fire in a fire proof or iron safe at night when said building was not open for business, nor failing in that did the plaintiff keep said inventory in some place not exposed to a fire which would destroy said building.

10th. All the plaintiff's books from the date of said inventory as provided for, down to the 1st day of January, 1897, were in said building at night when said building was not open for business, and were then and there not in a fire proof iron safe, and were then and there with said building destroyed by the said fire referred to in said declaration.

11th. Plaintiff failed to produce such set of books and inventories for the inspection of the defendant, notwithstanding this defendant requested of plaintiff an opportunity to inspect them straightway upon being notified as alleged of said fire, the plaintiff admitting that the fire occurred at night, when said building was not open for business, and that the last preceding inventory and his books covering said transactions prior to January 1, 1897, had been

kept in said building and not in a safe, and were destroyed by the same fire which destroyed said building.

Plaintiff moved to strike these pleas upon the ground that they were immaterial and irrelevant and not the pleas required by law, which motion was denied.

Plaintiff thereupon joined issue upon the 3rd, 4th, 5th, 6th and 7th pleas. He replied to the 8th plea, admitting that he took an inventory within twelve calendar months prior to the date of the policy, and that he did not take an inventory within thirty days, alleging as a reason that the policy did not so require, and averring that he did keep such a set of books from the date of the inventory as provided for while the policy remained in force. This replication was demurred to by defendant, but the demurrer was overruled and thereupon defendant joined issue upon it.

Plaintiff filed separate replications to the 9th, 10th and 11th pleas, each admitting that he did not keep and perform the certain covenant and warranty in the declaration styled the iron safe clause, in the particular mentioned in the plea to which the replication was addressed, and alleging that "the defendant after knowledge of the facts set forth in said plea waived said performance and forfeiture and treated said policy as obligatory and promised to pay the same."

The defendant demurred to the replications to the 9th, 10th and 11th pleas, assigning points of law to be argued with respect to each replication, as follows: 1. It is a material departure from the declaration.

2. Declaration avers performance, replication admits non-performance.

3. Waiver a legal conclusion.

4. No consideration for the promise.

5. The alleged avoidance does not suffice in law to defend against the confessed plea.

6. It does not appear plaintiff was misled to his prejudice.

This demurrer was sustained August 4, 1898.

On November 29, 1898, the court entered final judg-
ment reciting that the defendant's demurrer to the plaintiff's
sole replication to the 9th, 10th and 11th pleas had been
sustained; that said pleas were to the whole declaration and
stood confessed of record, and that no application was made
for leave to file an amended or new pleading, and adjudging
that defendant go hence without day and recover its costs.

From the final judgment so entered plaintiff sued out
this writ of error and assigns as error the following rulings
of the court below: 1. Sustaining demurrer to amendment
of the declaration and striking same.

2. Refusing the motion of plaintiff to strike defendant's
pleas numbered 3, 4, 5, 6, 7, 8, 9, 10 and 11, and each of
them.

4. Sustaining defendant's demurrer to plaintiff's repli-
cations to the 9th, 10th and 11th pleas.

5. Entering final judgment for defendant.

*B. A. Thrasher* for plaintiff in error.

*A. W. Cockrell & Son* for defendant in error.

CARTER, J. (*after stating the facts*).—I. The amend-
ment of the declaration merely enlarged the claim for dam-
ages to be recovered, so as to include attorneys' fees, with-
out the addition of a single allegation as to plaintiff's right
to recover upon the cause of action alleged in the declara-
tion.   The demurrer to this amendment was based solely
upon the alleged unconstitutionality of the statute purport-
ing to authorize the recovery of attorneys' fees.   A de-
murrer does not lie to a declaration because it claims other
or greater damages than the case made legally entitles the
plaintiff to recover, demurrer not being the proper pleading
by which to test the extent of the recovery.   It was, there-
fore, error to sustain the demurrer to the amendment of the
declaration.   *Cline v. Tampa Waterworks Company,* de-

cided at this term. A motion was made, however, to strike the amendment on the same grounds, and while the order of the court does not in terms purport to sustain the motion to strike, it does in fact strike the amendment. In *Jacksonville, T. & K. W. Ry. Co. v. Griffin,* 33 Fla. 602, 15 South. Rep. 336, this court held that the fact that a count of a declaration may set up many elements that do not enter into the measure of damages is not ground of demurrer, but it may be cause, under section 1043, Revised Statutes, for reforming the count as calculated to embarrass the fair trial of the cause. Whether the amendment in this case could properly be regarded as calculated to embarrass the fair trial of the cause within the meaning of the statute we shall not stop to inquire, for whether so or not, it is clear that if attorneys' fees could properly be recovered, the court was in error in striking the amendment upon the grounds stated in the motion. Chapter 4173, act approved June 2, 1893, provides in its first section "that upon the rendition of a judgment or decree by any of the courts of the State against any life or fire insurance company in favor of the holder or holders of any policy of insurance written by such company there shall be adjudged or decreed against such insurance company and in favor of the holder or holders of such policy a reasonable sum as fees and compensation for his or their attorneys or solicitors prosecuting the suit in which the recovery is had." It is not denied that if this statute is consistent with the provisions of the State and Federal constitutions mentioned in the motion to strike, the motion should have been denied, and we find no reason to doubt that it is. The principles announced in the case of *Farmers' & Merchants' Insurance Co. v. Dobney,* — U. S. —, 23 Sup. Ct. Rep. 565, and other cases therein referred to control this case, and we are constrained to hold the statute valid as against the objections urged. The court erred, therefore, in striking the amendment of the declaration.

Tillis v. L. & L. & G. Ins. Co.—Opinion of Court.

II. The only argument under the second assignment of error relates to the refusal to strike the third and fourth pleas. If we construe the declaration as declaring upon the policy, the third plea was proper, because the declaration expressly alleged that the policy was under seal. The execution of this sealed instrument was properly denied by the third which was a plea of *non est factum,* and there was no error in refusing to strike it. Circuit Court Common Law Rule No. 67.

The fourth plea was not a proper plea· even if as contended by defendant the action was upon a covenant under seal, for the reason that under rule No. 67 above referred to the proper plea is *non est factum.* The court should have granted the motion to strike that plea.

III. The demurrer to the replications of plaintiff to the ninth, tenth and eleventh pleas was based upon several grounds. The first two contend that the replications are departures from the declaration, and are, therefore, subject to general demurrer. A departure in pleading is a matter of substance, and ground for general demurrer. *Tarleton v. Wells,* 2 N. H. 306; *Pease v. McKusick,* 25 Me. 73; *Pollard v. Taylor,* 2 Bibb, 234; *Keay v. Goodwin,* 16 Mass. 1; 1 Chitty's Pleading, 678. The defendant in error contends that the declaration alleges performance of all things to be performed by the plaintiff in general terms; that the pleas traverse this general allegation by alleging specifically non-performance of the iron safe clause; that the replications, instead of denying the allegations of the pleas, admit them and set up excuses for non-performance though the declaration alleges performance, and, therefore, the replies constitute departures. We infer from the citation of an authority in the order of the Circuit Judge upon the demurrer that he sustained it upon these grounds, but the order being general, this court can not reverse his ruling if it finds that any ground of demurrer was good. In order to determine whether the replications constitute departures in pleading

it will be necessary to ascertain what allegations of the declaration were material, treating it as a declaration upon the policy. In declaring upon an insurance policy it is not necessary to allege performance of promissory warranties or conditions subsequent, but only of conditions precedent which may under section 1045, Revised Statutes, be by a general averment. Promissory warranties and conditions subsequent are matters of defense to be pleaded by the defendant, and it is not necessary that the plaintiff anticipate such defenses and negative them by averring performance. *Redman v. Aetna Ins. Co.,* 49 Wis. 431, 4 N. W. Rep. 591; *Chambers v. Northwestern Mut. Life Ins. Co.,* 64 Minn. 495, 67 N. W. Rep. 367; *Forbes v. American M. L. I. Co.,* 15 Gray, 249, S. C. 77 Am. Dec. 360; *Johnson v. Northwestern Live Stock Ins. Co.,* 94 Wis. 117, 68 N. W. Rep. 868; *Insurance Co. v. Crunk,* 91 Tenn. 376, 23 S. W. Rep. 140; *Whipple v. United Fire Ins. Co.,* 20 R. I. 260, 38 Atl. Rep. 498; 2 May on Insurance, sec. 590; 4 Joyce on Ins., sec. 3684. The iron safe clause in this case was a promissory warranty in the nature of a condition subsequent, and it was not necessary to allege a compliance with its terms in the declaration. *Western Assur. Co. v. Redding,* 68 Fed. Rep. 708; *Kingman v. Lancashire Ins. Co.,* 54 S. C. 599, 32 S. E. Rep. 762; *Copeland v. Western Assur. Co.,* 43 S. C. 26, 20 S. E. Rep. 754. In *Levy v. Peabody Ins. Co.,* 10 West Va. 560, it was even held that an allegation that plaintiff had on his part performed all conditions of the policy, meant conditions that had not been waived, and that if defendant pleads that a certain specified condition has been violated by the plaintiff, plaintiff may reply a waiver. It is not necessary to approve the rule laid down in the West Virginia case, as under the principles announced above the allegations of the declaration in regard to performance must be construed with respect to conditions precedent, and as compliance with the iron safe clause is not a condition precedent, but a promissory warranty in the nature of a condi-

tion subsequent, it is not embraced within the allegations of performance contained in the declaration. *Kingman v. Lancashire Ins. Co., supra.* Even if we construe the declaration as alleging performance of that clause, such allegation may be rejected as surplusage. *Glens Falls Ins. Co. v. Porter,* 44 Fla. 598, 33 South. Rep. 473. It results, therefore, that as a breach of the iron safe clause was a matter of affirmative defense to be set up by plea, and not a condition precedent, performance of which was required to be averred in the declaration, it was entirely proper for the plaintiff to reply a waiver, as by so doing he was not departing from the allegations of the declaration in any material matter. 1 Chitty on Pleadings, *674.

Other grounds of demurrer claim that the alleged waiver is pleaded as a legal conclusion, that it is not alleged to be supported by a consideration and that facts are not alleged showing that plaintiff was misled to his prejudice. It appears from the declaration that plaintiff gave defendant immediate notice of the loss; that defendant's agent came to where the property was destroyed, made an adjustment of the loss, expressed himself satisfied concerning it, found that plaintiff had sustained a loss of $2,886.13, and thereupon then and there agreed and promised to pay plaintiff the amount of money secured to be paid by the policy. These allegations of the declaration are not denied by the ninth, tenth and eleventh pleas, and the replications allege that after knowledge of the breach of the iron safe clause the defendant promised to pay the policy. These allegations do not set up waiver as a legal conclusion, but aver the fact to be that defendant promised to pay the policy after knowledge of the breach of the iron safe clause. The object and purpose of the iron safe clause was to enable the defendant to secure reliable data upon which to base an adjustment of the loss. These pleas do not deny that plaintiff had kept books and the inventory as required, but alleged merely that they were not kept in the proper place and that they were not

produced because burned by the fire that destroyed the building. As the books and inventory were necessary or useful only in the matter of the adjustment, it must be assumed that defendant knew of their destruction and the breach of the iron safe agreement when it came to adjust the loss, and the eleventh plea so alleges, yet according to the allegations of the declaration which these pleas do not deny, and of the replications, the defendant adjusted the loss and agreed and promised to pay the policy after notice of this breach. of the agreement which under the policy wrought a forfeiture. It can not be assumed that the agent could have adjusted the loss without causing the plaintiff some trouble or inconvenience, but whether so or not we think the conduct of the agent in adjusting and agreeing to pay the loss after knowledge of the facts which would have caused a forfeiture of the policy operates as a waiver of the forfeiture, and that the replications are good as against the demurrer. This court has recognized the doctrine of waiver as applicable to insurance policies in the case of *Taylor v. Glens Falls Ins. Co.*, 44 Fla. 273, 32 South. Rep. 887, where it was held that a fire insurance company by unconditionally denying any liability whatsoever on its policy upon the destruction of the property covered thereby, waived proof of loss provided for in such policy. It is not always essential that the waiver be supported by a new consideration, nor that the facts be sufficient to constitute an equitable estoppel. Forfeitures are not favored in the law, and notwithstanding the strong language used in declaring the forfeiture that the policy "shall become null and void," the policy is not void, but voidable, and the party who has the right to declare it void may thereafter treat it as valid and it will be so. *Indian River State Bank v. Hartford Fire Ins. Co.*, decided at this term; *Oakes v. Manufacturers' Fire and Marine Ins. Co.*, 135 Mass. 248; *Viele v. Germania Insurance Co.*, 26 Iowa, 1; *Georgia Home Ins. Co. v. Allen*, 119 Ala. 436, 24 South. Rep. 399; *Kingman v. Lancashire Ins. Co., supra; Titus v.*

*Glens Falls Ins. Co.,* 81 N. Y. 410; *Corson v. Anchor Mutual Fire Ins. Co.,* 113 Iowa, 641, — N. W. Rep. —; *Rokes v. Amazon Insurance Co.,* 51 Md. 512. In the case of *Gibson Electric Co. v. Liverpool and London and Globe Ins. Co.,* 159 N. Y. 418, 54 N. E. Rep. 23, after reviewing quite a number of New York decisions the court say "although the decisions of this court, of which we have made this brief review, seem to warrant the conclusion that an insurer, even under the provisions of a standard policy, may estop itself from claiming, or may waive, a forfeiture under its conditions by its acts and the requirements it makes of the insured after knowledge of the forfeiture, still the circumstances and acts which are required to constitute such an estoppel or waiver seem to be quite firmly established. Thus, in the absence of an express waiver, at least some of the elements of an estoppel must exist. The insured must have been misled by some act of the insurer, or it must, after knowledge of the breach, have done something which could only be done by virtue of the policy, or have required something of the assured which he was bound to do only under a valid policy or have exercised a right which it had only by virtue of the policy. Such an estoppel or waiver must be established by the person claiming it by a preponderance of evidence, and neither an estoppel, nor a waiver of the breach of a condition after forfeiture by reason thereof, can be inferred from mere silence or inaction." In this case, after notice of the fact constituting the forfeiture, the company proceeds to adjust the loss and upon such adjustment, finding that the loss far exceeds the amount of the policy, promises and agrees to pay the amount of the policy. If these acts do not constitute an express waiver, they could only have been done by virtue of the obligation of a valid policy, and therefore the company knowing of the forfeiture, by such acts waived it, and are bound by such waiver. *Cotton States Life Insurance Co. v. Edwards,* 74 Ga. 220; *City Planing and Shingle Mill Co. v. Merchants', Manufactur-*

ers' and Citizens' Mut. Fire Ins. Co., 72 Mich. 654, 40 N. W. Rep. 777, S. C. 16 Am. St. Rep. 552; Eagan v. Aetna Fire and Marine Ins. Co., 10 West Va. 583; Levy v. Peabody Ins. Co., 10 West Va. 560; Fink v. Lancashire Ins. Co., 60 Mo. App. 673; German Ins. Co. v. Gibson, 53 Ark. 494, 14 S. W. Rep. 672; Farmers' and Merchants' Ins. Co. v. Chesnut, 50 Ill. 111; Billings v. German Ins. Co., 34 Neb. 502, 52 N. W. Rep. 397; Georgia Home Ins. Co. v. Allen, 119 Ala. 436, 24 South. Rep. 399; Kingman v. Lancashire Ins. Co., 54 S. C. 599, 32 S. E. Rep. 762; Corson v. Anchor Mutual Fire Ins. Co., 113 Iowa, 641, N. W. Rep.

We are referred to a clause in the policy that "the use of general terms, or anything less than a distinct specific agreement clearly expressed and endorsed on this policy shall not be construed as a waiver of any printed or written condition or restriction therein," but we do not see that such clause affects the question here. It is doubtful if it has reference to waivers of forfeitures made after a loss has occurred, as its language seems applicable to waivers of the conditions or restrictions in the policy. But however that may be, it is a clause which may itself be waived, and if the company adjusted the loss and promised to pay the policy with knowledge of the forfeiture, it will be bound, notwithstanding such waiver was not endorsed on the policy. The adjustment and unconditional promise to pay the loss with full knowledge of the forfeiture, with no reservation that the waiver was to be endorsed upon the policy, will bind the company to such waiver, notwithstanding the clause referred to.

The judgment of the Circuit Court of Alachua county is reversed and the cause remanded with directions to overrule the demurrer to and motion to strike the amended declaration, to grant the motion to strike the fourth plea and to overrule the demurrer to plaintiff's replications to the ninth, tenth and eleventh pleas, and for such further pro-

ceedings as may be conformable to law and consistent with this opinion.

(HOCKER, J., and COCKRELL, J., being disqualified, took no part in the decision of this case.)