# Chamberlain, Trustee, *v.* Shawnee Fire Insurance Co.

## *Assumpsit.*

(Decided April 9, 1912.  58 South. 267.)

1. *Insurance; Policy; Iron Safe Clause.*—Unless the insurer waives the breach, an insured who breaches the iron safe clause of the policy cannot recover for loss of the merchandise insured.

2. *Same; Evidence.*—The evidence examined and held sufficient to support a finding that the adjuster did not waive a breach of the iron safe clause of the policy.

3. *Same.*—Where the insured failed to produce the books of his business covering a period of a month and a half, and a subsequent ledger showed merely the footings of the ledger kept during such period, there was no substantial compliance with the iron safe clause of the policy.

4. *Same; Memorandum; Evidence.*—A memorandum taken by an insurance adjuster from the books of the insured was admissible to show at what point he ceased making investigation and taking notes, though not admissible as proof of the correctness of the items contained.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Action by B. B. Chamberlain as trustee in bankruptcy against the Shawnee Fire Insurance Company upon a policy issued to the bankrupt.  Judgment for defendant and plaintiff appeals.  Affirmed.

ROACH & CHAMBERLAIN, for appellant.  No brief reached the Reporter.

BESTOR, BESTOR & YOUNG, for appellee.  The iron safe clause is a condition in the nature of a promissory warranty, a breach of which by the assured will void the policy.—*Robinson v. Aetna F. I. Co.,* 135 Ala. 650; *Home I. Co. v. Allen,* 128 Ala. 457; *Crawford v. Hanover F.*

[Chamberlain, Trustee, v. Shawnee Fire Insurance Co.]

I. Co., 121 Ala. 258; 128 Ala. 477; 119 Ala. 436; 19 Cyc. 761. The pleas were sufficient.—*Prior v. Beck,* 21 Ala. 393; *Baker v. Pope,* 49 Ala. 418; *Copeland v. McAdory,* 100 Ala. 556; *Kirby v. Forbes,* 141 Ala. 299. The evidence was sufficient to establish a breach of the iron safe clause.—*Hanover v. Crawford, supra; Home I. Co. v. Allen, supra.*

McCLELLAN, J.—Action by a trustee in bankruptcy (appellant) upon a fire insurance policy issued to the bankrupt.

The property destroyed was a stock of merchandise. The insurer discharged its liability for the building covered by the policy, but denied liability for the loss of the stock of merchandise, asserting in defense of the action the breach by the insured (bankrupt) of the "iron-safe clause" of the policy. This defense, predicated of three features of that clause, was set up in pleas 2, 3, and 4, respectively. The court overruled demurrers to each of them, and these rulings afford the bases of assignments of error.

The wholesome purpose and effect of an "iron-safe clause," in policies of insurance covering merchandise, has been repeatedly treated and announced by this court. Such a clause establishes a condition subsequent, which happening bars a recovery on the policy.—*Georgia Home Ins. Co. v. Allen,* 119 Ala. 436, 24 South. 399; *Hanover Fire Ins. Co. v. Crawford,* 121 Ala. 258, 25 South. 912, 77 Am. St. Rep. 55.

Plea 4 asserts, with all legal sufficiency, the breach of the condition of the *clause* in respect to the production of the set of books required to be kept by the insured, and the production of which, in the event of loss or damage by fire, for the inspection of the insurer, is enjoined upon the insured by the contract of insurance.

This plea was proven without dispute. So, if other pleaded matter did not avoid the consequence, the finding must have been for the insurer (defendant) on *that* plea. The only matter that could avoid the breach asserted in the *fourth* plea was a waiver by the insurer.— *Hanover Fire Ins. Co. v. Crawford, supra.* This issue of fact was tried, and was resolved against the waiver asserted by plaintiff. The correctness of this finding will be later considered.

Among other special replications (no general replication appears in the transcript), that numbered 11 was stricken on demurrer. This ruling is urged for error here. This special replication sought to avoid the effect of the failure of the assured to produce his book, covering the period of business between the date of the issuance of the policy, January 31, 1907, and the date of opening of ledger C on March 15, 1907, in which the footings only of the ledger B accounts were brought down, upon the averred theory that there was a substantial compliance with the requirement of the "iron-safe clause" in this respect, and that no injury or prejudice was occasioned the insurer, in that the books kept and produced, covering the period from March 15, 1907, to and including the date of the fire, wherein the footings of accounts drawn down from ledger B, as indicated, were shown, exhibited a complete history of the business of the insured between said dates, and showed that at the time of the fire there was on hand and destroyed by the fire a stock of merchandise, covered by the policy, in excess of the amount of the policy on merchandise.

Obviously this special replication 11 did not assert any waiver by the insurer of the breach set up in the *fourth* plea. In assumed avoidance of that breach of the contract of insurance by which the insured was

bound, the legal effect of the special replication 11 was to assert merely that the breach was without injury to the insurer; for it is not to be doubted that the absence of ledger B (destroyed in the fire) wrought an hiatus of over one month in the record history of the business which the insurer had engaged to keep and produce for the inspection of the insurer.—*Georgia Home Ins. Co. v. Allen, supra; Hanover Fire Ins. Co. v. Crawford, supra.* With that record history unavailable, there was no substantial compliance with the *iron-safe clause.*— *Georgia Home Insurance Co. v. Allen, supra.*

The intent of the provisions of that clause is to afford the insurer the best means and most reliable data for the ascertainment of the insurer's liability, and to protect the insurer from the perpetration of any fraud "with respect to the quantum and value of the goods destroyed."—*Hanover Fire Ins. Co. v. Crawford, supra.* If the theory of the special replication was accepted, it is evident that the office and purpose of the clause would be wholly defeated.

The part of the opinion in *Western Assurance Co. v. McGlathery,* 115 Ala. 213, 22 South. 104, 67 Am. St. Rep. 26, to which appellant's counsel refers in brief, in this connection, was the expression of the writer only; the controlling view being otherwise.

Upon the issue of waiver vel non—by the representative of insurer—of the breach of the *iron-safe clause,* as indicated, the evidence was in conflict. The court, without the intervention of the jury, determined it against the plaintiff's contention.

The testimony of the representative of the insurer was to the effect that there was no waiver; while that of the insured, Pinkerton, and his witnesses, Loftin, his bookkeeper, and Repshear, a drayman who had been (1907) in the employ of the insured, was to the effect

[Chamberlain, Trustee, v. Shawnee Fire Insurance Co.]

that the insurer's representative continued the investigation, with a view to the adjustment and settlement of the loss, after he had been fully advised of the destruction of ledger B; and also that the representative of the insurer promised to pay the loss a few days later at a more accessible railroad station some miles away, where insured's policy was then in keeping. It was shown beyond doubt that the adjuster, soon after his arrival at the scene of the fire, entered upon an investigation of the books delivered to him, taking memoranda therefrom as he proceeded. It was also shown by some of the testimony that he stopped this proceeding upon being told that ledger B, from which the "footings" in the body of the ledger C purported to be taken, was destroyed. In corroboration of the adjuster's testimony of *when* he ceased the investigation of the books, the defendant offered in evidence the memorandum taken, as stated, in the progress of the investigation he did make. It is earnestly insisted that this was error. We think not. It was admitted in evidence for the purpose stated, "not that the itemization was right," or that the insured was in any wise bound by the tabulation so made by the adjuster. That this tabulation, so taken, ended at a point consistent with the defendant's theory of the adjuster's acts was a circumstance admissible, and, while, of course, by no means conclusive, considerable by the court in determining the truth of the matter. Certainly, if the memorandum had been made at any other time, it would not have been admissible. It is the circumstances attending the making of the memorandum that give it an evidential character, and that render it relevant and pertinent to the issue litigated.

The case of *Brandon v. Progress Distilling Company,* 167 Ala. 365, 52 South. 640, like others cited at this point by counsel for appellant, was where an *indebted-*

[Chamberlain, Trustee, v. Shawnee Fire Insurance Co.]

*ness* was sought to be shown by an unsworn memorandum, to the correctness or truth of which there was no evidence tending to show an admission, express or implied. In other words, there the *contents* of the memorandum, as evidencing liability, was the intent of the party offering it in evidence; whereas here the mere physical fact, not the contents of the memorandum, that it ended in the midst of a book investigation, to which it must be referred, was the sole object of its offer and admission in evidence.

The evidence on the issue of waiver has been carefully considered. It cannot be held that the learned court erred in his conclusion thereupon. That the adjuster did not, when at Emery, Ala., assure the insured that he would pay the loss at Wayneboro, the railway station some miles away, is strongly supported by the insured's subsequent letter of January 9, 1908, to the adjuster's firm at Birmingham, Ala., in which he wrote: "If I can arrange with my persons that has garnished me, what kind of settlement will you make?" It is impossible to reconcile the necessary implication of this letter with a promise by the adjuster to pay the loss. The letter would cast the conclusion against the insured, were the other evidence less favorable to the defendant on the issue of waiver.

The correct conclusion appears to have been reached by the court. There is no prejudicial error in the record. The judgment is affirmed.

Affirmed. All the Justices concur.