(75 South. 207)

No. 20834.

BOULANGER v. BRITISH UNDER-
WRITERS et al.

(April 16, 1917.)

*(Syllabus by Editorial Staff.)*

INSURANCE &⫌335(3)—FORFEITURE OF POLICY
—KEEPING BOOKS.

A provision in a fire policy requiring assured to keep a set of books presenting a complete record of business transacted, including purchases, sales, and shipments both for cash and credit, was not complied with by making a memorandum on a slip of paper of each cash receipt and each credit sale and entering these items in the cashbook and ledger weekly and keeping no account of purchases except by preserving the invoices of those purchases for which there were invoices, since the policy required the books to be kept in the usual customary way, and the entries should be made at or near the time the transactions occurred.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 853.]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by A. E. Boulanger against the British Underwriters and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Alexander & Wilkinson, of Shreveport, for appellant. McLaurin & Armistead, of Vicks-

burg, Miss., and G. W. Hardy and J. S. Atkinson, both of Shreveport, for appellees.

PROVOSTY, J. Plaintiff's store was destroyed by fire, and he brings this suit upon the fire insurance policy on the merchandise. One of the defenses is that he failed to keep a set of books as required by the following clause of the policy:

"The assured will keep a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from the date of inventory as provided for in the first section of this clause, and during the continuance of the policy."

Plaintiff says that his way of keeping books was that he made a memorandum on a slip of paper of each amount of cash received and of each credit sale, and kept these slips in a drawer, and entered them in his cashbook and ledger on Friday nights; that he destroyed the cash slip after he had entered it, and preserved the credit slip until the customer had paid, when he gave it up to him; that the credit sales were itemized on the slips, but were entered in the ledger under the general designation simply of merchandise; that he kept account of his purchases by preserving the invoices, except that sometimes purchases were made for cash without any invoice and that of these he kept no account.

Taking his word for his having done exactly as he here says, we do not think this was keeping a set of books within the intendment of said clause. We think the entries should be made in the books without unnecessary delay. If thus promptly made, they are more likely to be correct and honestly made. The insurance company is clearly at great disadvantage in having to trust to the insured to make the record correctly; this disadvantage should not be increased by allowing him to make this record periodically, instead of regularly as the facts to be record-

ed come into existence. If he can wait one week to make the entries, why not two weeks, or longer; and, if the making of the slips is keeping a set of books, why enter the slips in a book at all. We agree with the Supreme Court of Mississippi that the entries should be made "at or near the time" the transactions occur. Penix v. American Cent. Ins. Co., 106 Miss. 145, 63 South. 346. And we are much of the way of thinking of the Court of Appeals, Second Circuit, this state, that they should be made "daily" (No. 570 of its docket, D'Anna v. Mutual Fire Ins. Co.), at least in the absence of some good reason for postponement.

In Clark v. Insurance Co., 130 La. 584, 58 South. 345, relied upon by plaintiff, no question arose in connection with the promptness or tardiness with which the entries had been made.

The learned counsel for plaintiff say that the said clause was written by the insurance company, and should be read as written, and that as written it says nothing of the entries having to be made daily.

The clause was not written by the insurance company any more than it was written by plaintiff, it is statutory; and, when it speaks of keeping a set of books, it must be understood to mean the doing so in the usual, customary way; and the usual, customary way is not for merchants to keep slips of paper in a drawer to be posted at more or less irregular intervals, but to keep a contemporaneous record in books provided for that purpose.

We will add that we are not favorably impressed with the disappearance of plaintiff's memorandum cashbook and with the fact that, although the fire occurred on June 6th, his cashbook showed cash sales entries on Friday, June 13th, June 20th, June 27th, and Saturday July 5th, which entries he had to account for on the plea of mistake.

Judgment affirmed.