(104 So. 224)

**HANOVER FIRE INS. CO. v. WOOD. (6 Div. 120.)**

(Supreme Court of Alabama. Jan. 28, 1925. Rehearing Denied May 14, 1925.)

**1. Insurance ⬤⟶335(1)—Conditions subsequent are binding on insured.**

Warranties or conditions subsequent in policy, such as iron safe clause, and requirement for keeping of books and taking of inventories, are reasonable and binding on insured.

**2. Insurance ⬤⟶335(3)—Requirement of fire policy on stock of goods as to keeping of books requires no particular form of bookkeeping.**

Requirement of fire policy on stock of merchandise as to keeping of books requires no particular form of bookkeeping, but there should be something that perpetuates, in intelligible and reasonably acceptable form, memory of things as they were understood at their date.

---

⬤⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

3. **Insurance** ⟨⟩335(3)—**Requirement of insurance policy on stock of merchandise as to keeping of "books" held not complied with.**

Requirements of fire insurance policy on stock of merchandise as to keeping of "books" *held* not complied with, where system used by insured was not a set of books nor any part thereof, and only evidence of his transactions furnished thereby after they were a week or a month old was to be found in a large number of loose-leaf memoranda kept in drawer which was not designed for keeping in a fireproof safe in compliance with "iron safe clause."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Book.]

4. **Appeal and error** ⟨⟩171(1)—**Insurance** ⟨⟩ 387—**Statement of insurer's agent held not a waiver of stipulation requiring insured to keep books; theory of case below binds on appeal.**

Statement of insurer's agent in writing fire policy on stock of merchandise, that stipulation of "iron safe clause" would be waived, *held* not a waiver of stipulation requiring insured to keep books, though such stipulations constituted parts of "iron safe clause" where they were separate and distinct in both form and substance, and action on policy was tried on theory that a breach of agreement to keep books would afford a complete answer to complaint.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Action on a policy of fire insurance by W. J. Wood against the Hanover Fire Insurance Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Coleman, Coleman, Spain & Stewart, of Birmingham, for appellant.

The system of records kept by plaintiff is not a set of books, within the meaning of the policy provisions. Jones v. Ætna, 201 Ill. App. 142; Fidelity-Phœnix v. Williams, 200 Ala. 679, 77 So. 156; Ins. Co. of N. A. v. Williams, 200 Ala. 681, 77 So. 159; Fire Ins. Co. of Penna. v. Williams, 200 Ala. 688, 77 So. 166; Home Ins. Co. v. Williams, 237 F. 171, 150 C. C. A. 317; Chamberlain v. Shawnee Fire Ins. Co., 177 Ala. 516, 58 So. 267; Ga. Ins. Co. v. Allen, 119 Ala. 444, 24 So. 399; Monger v. Delaware Ins. Co., 97 Tex. 362, 79 S. W. 7; Day v. Home Ins. Co., 177 Ala. 609, 58 So. 549, 40 L. R. A. (N. S.) 652; Everett-Ridley v. Traders', 121 Ga. 228, 48 S. E. 918, 104 Am. St. Rep. 99; Hughes Bros. v. Ætna, 148 Tenn. 293, 255 S. W. 363; Pelican Ins. Co. v. Wilkerson, 53 Ark. 353, 13 S. W. 1103; Joyce on Ins. 2063. The question whether records kept are a compliance is a question of law for the court. Authorities supra. A waiver is an intentional relinquishment of a known right, claim, or privilege. May on Ins. (4th Ed.) 1208; W. O. W. v. Jones, 11 Ala. App. 441, 66 So. 834; Ala.

State, etc., Ins. Co. v. Long, 123 Ala. 675, 26 So. 655.

Weatherly, Birch, McEwen & Hickman, of Birmingham, for appellee.

A substantial compliance with the iron safe clause as to keeping books and inventories is all that is necessary. 14 R. C. L. 1139; West. Assur. Co. v. McGlathery, 115 Ala. 213, 22 So. 104, 67 Am. St. Rep. 26; Fidelity-Phœnix v. Williams, 200 Ala. 679, 77 So. 156; L. & L. Ins. Co. v. Kearney, 180 U. S. 132, 21 S. Ct. 326, 45 L. Ed. 462. Denial of all liability waiver of proof of loss. 26 C. J. 406; Con. Ins. Co. v. Parkes, 142 Ala. 650, 39 So. 204; Home Ins. Co. v. Koob, 113 Ky. 360, 68 S. W. 453, 58 L. R. A. 58, 101 Am. St. Rep. 354; Comm. Ins. Co. v. Allen, 80 Ala. 571, 1 So. 202; Firemen's Ins. Co. v. Crandall, 33 Ala. 9.

SAYRE, J. Appellee had judgment against appellant in an action on a policy of fire insurance. Appellee was a merchant, and the policy covered his stock of goods and store fixtures. The policy contained the following covenants:

"The following covenant and warranty is hereby made a part of this policy:

"First. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within 30 days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

"Second. The assured shall keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continuance of this policy.

"Third. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire proof safe at night, and at all times when the building mentioned in this policy is no [not] actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to fire which would destroy the aforesaid building.

"In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

The main insistence for appellant is that appellee breached the covenant, supra, in that he failed to keep a set of books which clearly and plainly presented a complete record of the business transacted by him, and upon this is based the argument for a reversal on the first assignment of error,

which is that the trial court erred in refusing appellant's request for the general affirmative charge.

This question depends upon the testimony of appellee, all such records as he kept having been wholly destroyed by the fire. As to the facts involved, he was examined at considerable length, but his account of what he did in the way of keeping a record of the transactions of his business may be fairly stated as follows: He used the "McCaskey system" in keeping a record of his transactions with credit customers. According to this system there was an arrangement of compartments, one for each customer—in appellee's case 600 of them, though appellee had not that number of credit customers—with a cash drawer and a cashier's window in the midst. There was also an arrangement of drawers below to which old accounts were transferred. "This McCaskey register was 6 feet long, about 2½ high, but the little register"—meaning, as we understand, the arrangement of drawers below—"where you keep your accounts, 2 feet long and 2 feet high." "It was a regular chart of your daily business by cards, and there were bottom drawers for those, and there was a daily business, a weekly business, and a monthly business drawer. That was the only books I had, except my ledger and daybook. I kept all of my purchases in the daybook, and received on accounts also in that book, and I transferred them at the end of the week to the register. I used the ledger for purchases and sales, and then the McCaskey system for my customers; just for my daily credit business." At the end of each day's business the total of credit sales would be noted on a daily report sheet which was kept in the register. In the same manner, memoranda showing payments by credit customers were kept in the register. We understand appellee's testimony to intend that, at the end of each credit period, weekly, or monthly—or even daily, if he gave credits for a day only—the loose slips were taken from the register and deposited in the little register, or drawers below. Merely the totals were noted on appellee's so-called ledger. Appellee kept a daybook and a ledger. He used the ledger "for purchases and sales"—you might say a summary on a ledger of my purchases and sales. "At the end of the week I would transfer them to this ledger." Purchases of country produce and expenses were noted on the daybook. Appellee testified:

"I got an invoice for every article that I bought from a jobber, and I would put that in the ledger the number of the invoice, the date, from whom I bought it, and the amount. I would then file the invoices on a file after doing that, for future reference, so I could go back through my books. The book for those invoices was kept under my desk. * * * When I sold goods for cash, I would register that on the cash register, and if I sold on a

credit, I did as I have detailed with the McCaskey register."

Appellee also testified that he took an inventory of his stock of goods according to contract. The fire which destroyed appellee's stock of goods and fixtures occurred after the store had been closed for the night.

[1-3] By the great weight of authority the warranties—or conditions subsequent, as we had better describe them in view of the very general rule of the courts to construe them liberally—are held to be perfectly reasonable and binding upon the assured. This court has distinctly and repeatedly announced its concurrence in this proposition. Georgia Home Ins. Co. v. Allen, 128 Ala. 451, 30 So. 537; Day v. Home Ins. Co., 177 Ala. 607, 58 So. 549, 40 L. R. A. (N. S.) 652; Insurance Co. v. Williams, 200 Ala. 681, 77 So. 159, where other cases are cited; 26 C. J. 250, note 57; Cooley's Ins. Briefs, 1814. It may be well also to advert to the doctrine that:

"There is no authority in the courts, on the supposition that the purposes which the parties intended to secure may have been unnecessary or as well secured by other means to disregard the valid requirements and conditions of such contracts, or to construct by implication or otherwise, a new agreement in place of that deliberately made by the parties." Dwight v. Insurance Co., 103 N. Y. 346, 8 N. E. 654, 57 Am. Rep. 729; Day v. Home Ins. Co., supra.

However, as the result of the rule of liberal interpretation in favor of the assured, it is by this court, and very generally, held that substantial compliance with the requirements of the policy in this regard is sufficient; but "the books must show with reasonable certainty a complete record of the insured's business transactions, including purchases and sales for cash or credit." Insurance Co. v. Williams, supra. "No particular mode of keeping books is required if the amount and value of the goods destroyed may be ascertained therefrom with reasonable certainty by a person of ordinary intelligence, with the assistance of those who understand the system with which the books are kept, but otherwise unaided by parol." 26 C. J. 254, citing Home Ins. Co. v. Williams, 237 F. 171, 150 C. C. A. 317; Fire Association of Philadelphia v. Williams, 200 Ala. 688, 77 So. 166; Insurance Co. v. Williams, 200 Ala. 681, 77 So. 159; Fidelity-Phœnix Ins. Co. v. Williams, 200 Ala. 678, 77 So. 156. The law requires no particular form of bookkeeping; but it seems obvious that there should be something that perpetuates in intelligible and reasonably accessible form the memory of things as they were understood at their date. It is clear enough that the "McCaskey system" used by appellee was not a set

of books nor any part of a set of books such as the policy required appellee to keep. The only evidence of appellee's transactions furnished by it, after they were a week or a month old, was to be found in a number— a very large number, we may assume—of looseleaf memoranda kept in a drawer, and its bulk, along with other features to which we have referred, abundantly suffice to show that it was not designed for keeping in a fireproof safe, or as a compliance otherwise with the requirements of the "iron safe clause," and so not a set of books within the meaning of the policy. Jones v. Ætna Ins. Co., 201 Ill. App. 142; Hughes v. Ætna Ins. Co., 148 Tenn. 293, 255 S. W. (Tenn.) 363.

Appellee's testimony was that sales for cash were registered on a cash register. As for that, it must be noted that it does not appear whether the cash register showed only cash received from cash sales, nor does it appear that any record was kept except, we may assume, though the evidence does not show it, the slips on which the cash register noted the amounts of each sale for cash. In Monger v. Insurance Co., 97 Tex. 362, 79 S. W. 7, cited to the text of 26 C. J. 255, where nothing appears to the contrary, the evidence was that the assured, a partnership, "kept a cash register of the National Cash Register Company, and that they had kept the slips which were preserved from that register for each day during the time that the book showed no entry of cash sales, and that the strips taken out of the cash register would show the amount of money received each day upon the sales of goods." In addition the assured kept a combined journal and ledger. The court said:

"The evidence showed conclusively that these strips constituted the only record kept by the plaintiffs of the cash sales made for about six months. We think that a set of books means something more than loose memoranda like the strips which the plaintiffs kept, and, while it is difficult to say what will constitute a substantial compliance with such requirement to keep books, we have no hesitation in holding that the cash strips kept by the plaintiffs were not such compliance in any sense whatever."

And in Fisher v. Sun Insurance Office, 74 W. Va. 694, 83 S. E. 729, L. R. A. 1915C, 619, it is held that the keeping of books which do not show the items sold, but only the gross amounts of weekly sales, is not a compliance with the condition of the "iron safe clause." And in Everett-Ridley-Ragan Co. v. Traders' Ins. Co., 121 Ga. 228, 48 S. E. 918, 104 Am. St. Rep. 99, it was held that a daily cash book, showing the amount of cash taken in at the end of each day, but giving no indication of the source from which derived, whether from cash sales, the payment of past-due bills, or otherwise, does

not show compliance. In Boulanger v. British Underwriters, 141 La. 463, 75 So. 207, the court said:

"When it [the clause in question] speaks of keeping a set of books, it must be understood to mean the doing so in the usual, customary way; and the usual, customary way is not for merchants to keep slips of paper in a drawer to be posted at more or less irregular intervals, but to keep a contemporaneous record in books provided for that purpose."

Here it may be well to note our judgment that, since the books of a mercantile business are designed to present a practically contemporaneous history of its transactions from day to day, but not, we think, of every petty sale made by a retail dealer, a book record of daily cash receipts from sales out of the stock would satisfy the requirement of the clause in question. However, we have referred above to an authority for the more strict rule.

Appellee kept a ledger and a daybook, as we have shown in our statement of his testimony. But the ledger of which he speaks was no more than the "wholesale book" considered as insufficient in Insurance Co. v. Williams, supra. The daybook, as we have shown, contained only memorandum of country produce purchased and expenses. That, of course, was not a daybook in any real sense, though, as far as it went, it may have served the purpose. According to plaintiff's testimony, it contained only a partial history of his business transactions. Such records as the policy provided for were necessary to enable the insurer to ascertain with approximate accuracy the amount and value of the goods on hand at the time of the fire. Without some such records the insurer had no protection whatever against the false or partial estimates of the insured and his friends. In the presence of the reasonable stipulations of the policy for the preservation and production of means of ascertaining the loss, fair dealing and sound policy do not require insurance companies to settle losses on such records as appellee kept. Hughes v. Ætna Ins. Co., supra. All this, substantially, was decided in the Williams Cases to which we have adverted from time to time.

[4] One stipulation of the covenant in question, the whole being customarily referred to as the "iron safe clause," required that appellee should keep his books and inventory securely locked in a fireproof safe at night or in some place not exposed to fire which would destroy the building in which appellee did business. Appellee's testimony was to the effect that this stipulation had been expressly waived by appellant at the time the policy was written; but, as to this, the evidence was in irreconcilable conflict. Now, appellee suggests, by way of query, whether, when appellant

waived the safe-keeping of appellee's records, if so it did, it did not ipso facto also waive the keeping of such records at all. In view of the facts, we are unable so to hold. The two stipulations, though constituting parts of the so-called "iron safe clause," are separate and discrete in both form and substance, and, in this case, the waiver of one did not necessarily, or ipso facto, imply the waiver of the other, for appellee testified that, in a conversation relating to the fact that appellee had no safe, but in which books were not mentioned, "he," meaning the agent negotiating the policy on the part of appellant, "said, as that was a fire proof building, he would waive that clause." We do not think this, though accepted at full value by the jury, meant necessarily that appellee need keep no record whatever of his business, so that, in case of a partial destruction of his stock, though not of the entire store and its contents, appellant might perchance have some means of ascertaining the loss. At any rate, we note that the cause was tried by court and parties on the theory that a breach of the agreement to keep books without more —such was the allegation of plea 8 upon which, with others, the case was tried— if not waived afforded a complete answer to the complaint. It was not suggested by demurrer or otherwise that this theory of the case operated to the prejudice of appellee.

Appellee quotes from the opinion in Fidelity-Phœnix Ins. Co. v. Williams, 200 Ala. 678, 77 So. 156, as follows:

"If the records insured kept, viz., inventory taken in January, 1914, invoices, ledger, cash book (from January 1, 1914, to October 16, 1914) and the succeeding cash book had been preserved by being kept in the safe at night, he [insured] would have saved from the fire a sufficient record to have met the exactions of this feature of his contract"

—as authority for the proposition that the records kept by him in connection with the invoices, which appellee testified he kept on a file under his desk, evidenced a substantial fulfillment of his covenant as to "books and inventories." In that case the books of the insured except the wholesale book and ledger to which we will refer, were left out of the safe, and were destroyed by the fire which burned his stock of goods. So of his bills and invoices. The result was that he "had no record of any kind of my [his] purchases other than the wholesale book which only showed the name of the person from whom I [he] had bought the goods and the amount I [he] owed them; it just showed totals; it did not show any items." But, as appears from the statement of the facts by the court, "The insured produced for the adjuster's inspection a 'ledger for 1914; that is, an account book and ledger,' wherein the insured 'posted all charges for 1914.' " The insured's stock of goods had been destroyed by fire on the night of December 27, 1914. The court held that "it was not possible to ascertain what goods became a part of the stock during the year 1914," or of what the stock consisted at the date of the fire, and that defendant was entitled to the general charge, and in that connection used the language quoted at the head of this paragraph. It is clear, I think, that the books kept by the insured, and which survived the fire in that case, afforded as complete a record of the insured's stock and additions thereto as did the books kept by appellee in this. Appellee here lays stress upon "invoices" in the quotation aforesaid. But that does not meet the exigencies of his case. As we pointed out in Day v. Home Ins. Co., supra, where also the "iron safe clause" was at issue, appellant had stipulated for inventory and books, and it then seemed clear to the court that both together constituted an important safeguard against fraud, so that the court has no authority to dispense with either. It was there conceded that possibly, in exceptional cases, invoices may serve the purpose of an inventory, and it may now be conceded that invoices kept on a hook, if produced, may in an emergency serve the purpose of showing additions to stock; but it is not bookkeeping. However, if the utmost of appellee's contention were conceded as to invoices, there would remain the obstacle to his recovery, that he kept no complete or intelligible record of his stock depletions. Such records as he kept were burned with his stock of goods, and could not be produced, however ample or deficient; but so books kept in "fireproof" safes are occasionally burned. Nevertheless, the insured must keep books to comply with his obligation.

We have said enough to indicate our opinion that, upon the undisputed evidence, making it a question of law for the court (Fidelity-Phœnix Ins. Co. v. Williams, supra; Insurance Co. v. Williams, supra; Home Ins. Co. v. Williams, 237 F. 171, 150 C. C. A. 317), appellee breached his covenant in regard to keeping a set of books, and so, conceding that the issue as to appellant's alleged waiver of appellee's failure to keep his books and inventory in a fireproof safe was properly found in favor of appellee, and without considering the other questions presented, that appellant was entitled to the general affirmative charge, which it requested in due form, for, had the records he kept been produced after the fire, they would not have enabled appellant with reasonable certainty to ascertain the quantum and value of the goods destroyed.

It may be noted that the court here has not considered the divisibility (as between

stock and fixtures) of the contract of insurance as affected by the "iron safe clause." Hanover Fire Ins. Co. v. Crawford, 121 Ala. 258, 25 So. 912, 77 Am. St. Rep. 55. No such question was raised in the trial court, nor here. The trial court treated the alleged breaches of the clause as answers to the entire complaint; nor was the court invited to treat them otherwise.

Reversed and remanded.

All the Justices concur.