(116 So. 142)

## MISSISSIPPI FIRE INS. CO. v. PERDUE.
### (4 Div. 340.)

Supreme Court of Alabama. March 22, 1928.

1. Insurance ⊛335(2, 3)—Covenants in fire policy requiring taking of inventory and keeping books are valid and failure to substantially comply with them avoids policy.

Covenants in iron-safe clause of fire insurance policy on stock of merchandise requiring taking of inventory and keeping of books are valid provisions for protection of insurer and failure to comply with them substantially and in good faith avoids policy.

2. Insurance ⊛146(3)—Conditions subsequent in fire policy requiring taking inventory and keeping books are to be construed favorably to insured.

Covenants in iron-safe clause of fire insurance policy on stock of merchandise requiring taking of inventory and keeping books, being in nature of conditions subsequent, are to be construed favorably to insured.

3. Insurance ⊛335(3)—Requirement in fire policy for keeping of books requires no particular form of bookkeeping.

No special form of bookkeeping by insured is required to comply with provisions in fire policy on stock of merchandise requiring keeping of books.

4. Insurance ⊛335(3)—Insured, under fire policy on merchandise requiring keeping of books, may explain system employed and identify books.

Under fire insurance policy on stock of merchandise requiring insured to keep books, insured may by parol testimony explain system employed and identify books relating to business.

5. Insurance ⊛668(4)—Whether fire insurance policy on stock of merchandise was forfeited by failure to substantially comply with iron-safe clause held for jury.

Facts held not to warrant finding as matter of law that fire insurance policy on stock of merchandise had been forfeited by insured's failure to comply with provisions in iron-safe clause requiring taking of inventory and keeping of books of insurance, but question was for jury on conflicting evidence.

6. Insurance ⊛646(2)—Insurer has burden of showing policy was forfeited by breach of condition subsequent.

Insurer has burden of showing forfeiture of fire insurance policy by breach of condition subsequent in iron-safe clause requiring taking of inventory and keeping of books.

7. Appeal and error ⊛1060(1)—Argument of insured's counsel that insurer took advantage of statement of owner of burned store held not to require reversal.

In action on fire insurance policy for destruction of stock of merchandise, argument of plaintiff's counsel that insurer undoubtedly heard and took advantage of statements of owner of store burned, that plaintiff had burned

it, and that they would beat him out of the insurance if he did not pay for it, held not so manifestly foreign to the case as to warrant a reversal therefor.

8. Trial ⊛121(2)—Liberal rules are allowed counsel in drawing inferences before the jury.

Rather liberal rules must be allowed counsel in drawing inferences before the jury.

9. Appeal and error ⊛1005(3)—Denial of new trial will not be disturbed, where evidence is conflicting.

There being a wide conflict in testimony, trial court's action refusing new trial on ground that it was contrary to great weight of evidence will not be disturbed.

Appeal from Circuit Court, Covington County; Walter B. Jones, Judge.

Action on a policy of fire insurance by W. L. Perdue against the Mississippi Fire Insurance Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Steiner, Crum & Weil, of Montgomery, and Powell, Albritton & Albritton, of Andalusia, for appellant.

The trial court erred in charging the jury that the burden was on the defendant to reasonably satisfy the jury that plaintiff had failed to take an itemized inventory as required by the policy, and had failed to keep a set of books clearly showing his business transactions. Objection to the argument of plaintiff's counsel should have been sustained. Defendant was due the affirmative charge. It was error to overrule the motion for a new trial. 5 Joyce on Ins. § 3784; 3 Joyce, § 2063, pp. 3468–3488; 2 Cooley's Briefs, pp. 1821, 1822–1824; 2 Words and Phrases, Second Series, 1187; Ins. Co. v. Williams, 200. Ala. 681, 77 So. 159; American Ry. Exp. Co. v. Reid, 216 Ala. 479, 113 So. 507.

Marcus J. Fletcher, of Andalusia, for appellee.

A substantial compliance with the iron safe clause is all that is necessary. Ins. Co. of N. A. v. Williams, 200 Ala. 681, 77 So. 159; Fidelity-Phœnix Ins. Co. v. Williams, 200 Ala. 678, 77 So. 156; Ga. Home Ins. Co. v. Allen, 119 Ala. 436, 24 So. 399. No particular mode of bookkeeping is required. The books and inventories produced were sufficient. Fidelity-Phœnix Ins. Co. v. Williams, supra. Hanover Fire Ins. Co. v. Wood, 213 Ala. 132, 104 So. 224, 39 A. L. R. 1436; Western Assur. Co. v. McGlathery, 115 Ala. 213, 22 So. 104, 67 Am. St. Rep. 26; Queen Ins. Co. v. Vines, 174 Ala. 568, 57 So. 444; London Assur. Corp. v. Poole, 212 Ala. 109, 101 So. 831. Parol proof is admissible to explain the system of bookkeeping used by the assured. Fidelity-Phœnix Ins. Co. v. Williams, supra. The burden was on defendant to show noncom-

pliance with provisions as to inventories, etc. London Assur. Corp. v. Poole, supra; Fidelity-Phœnix Ins. Co. v. Williams, supra. The argument of counsel was a legitimate inference from the evidence.

BOULDIN, J. The main questions presented on this appeal relate to alleged breach of the promissory warranty or condition subsequent in the iron-safe clause of a policy of fire insurance issued upon a stock of merchandise, wherein the insured covenanted to take an inventory of the stock and to keep a set of books clearly showing a complete record of business transacted, including purchases and sales, both for cash and credit, from the date of the inventory. The contract was in the standard form set out in the opinion in Hanover Fire Ins. Co. v. Wood, 213 Ala. 132, 104 So. 224, 39 A. L. R. 1436.

Plaintiff produced and submitted to the insurer his inventory and books after the loss. The originals are sent up by order of the trial court, and we are to deal with their sufficiency as a substantial compliance with the contract.

The inventory, dated July 11, 1924, two days after the date of the policy, is on a pencil tablet showing an itemized list, giving the number of articles of each kind; a brief description, the price per unit, with totals run out aggregating in all $2,178.15. The criticism of this inventory is directed to pages 9 to 14, inclusive, covering dress goods sold by the yard, aggregating in value about one-third the stock. Each piece or bolt is listed, giving number of yards and price per yard, but is described merely as "cloth."

Appellant insists it must show the kind of cloth, such as calico, gingham, sateen, serge, etc. The book showing credit sales gives kind of goods, name of purchaser, and price, but no date of sale. A separate list headed "cash sales" appears on a small ledger showing gross amount of each day's cash sales, but no list of articles sold for cash. On the same ledger appears the several purchases of new goods, giving dates, names of jobbers, and amount of each purchase, but no itemized list of articles. Original itemized invoices of these purchases were produced and also sent up. Did these defects or omissions in the inventory and account books avoid the policy as matter of law, and entitle the defendant to the affirmative charge?

[1, 2] Covenants of this character are valid provisions for the protection of the insurer, and a failure to comply therewith substantially and in good faith avoids the policy. At the same time, being in the nature of a condition subsequent, the provision is to be construed favorably to the insured.

[3, 4] No special form of bookkeeping is required. The elaborate system of bookkeeping necessary to show the state of a big business would be wholly unsuited to the small business of a country store. The inexperienced and untrained may formulate his own plan, provided it shows the essential facts. He may, by parol testimony, explain the system employed and identify the books relating to the business. Plaintiff had opened the business at Heath in May, took out the insurance in July, and the fire occurred in August following. In explanation of the credit accounts on the day book or blotter on which they appear, plaintiff's evidence was to the effect that he ran a cross mark through the accounts so far as they represented sales prior to taking the inventory, and the items not crossed out represented subsequent sales. Although the items were undated, the book, thus explained, if a true memorial of such business, clearly disclosed the amount of subsequent sales. Credit sales, according to the book, were quite nominal in amount.

In entering the piece goods on the inventory as "cloth," the plaintiff merely followed the description in the invoices received from the jobber or wholesaler. The point is made that this does not give information as to the correctness of the values per yard, and opens the door for fraud. If it did show items of "gingham," for example, this would by no means show whether the value of this particular piece was correctly stated in the inventory.

A pair of shoes may be worth $1 or $10, a suit of clothes $10 or $50. If an inventory must give details by which the true value of each item may be determined, and whether at variance with the value as given on the inventory, a wholly impractical amount of descriptive data would be required.

We cannot say the keeping of an itemized account of each cash sale, the same as a credit sale, is contemplated in running a business of this sort. The books show sales of soft drinks, chewing gum, candy, cigarettes, and numerous five and ten cent items. In Everett-Ridley-Ragan Co. v. Traders Ins. Co., 121 Ga. 228, 48 S. E. 918, 104 Am. St. Rep. 99, referred to in our case of Hanover Fire Ins Co. v. Wood, 213 Ala. 132, 104 So. 224, 39 A. L. R. 1436, it appeared cash receipts for each day from all sources, including payments on past-due accounts and other sources, were entered in gross. This gave no information as to amount of cash sales for the day. This fact is made the basis of the decision. This Georgia case quotes an Arkansas case to the effect that cash sales must be itemized on the books, but declares the rule in Georgia to be a more liberal one. Dealing with the ledger showing subsequent purchases as above stated in connection with invoices in evidence, a case is presented similar to Fidelity-Phœnix Ins. Co. v. Williams, 200 Ala. 678, 77 So. 156, except in the Williams Case the invoices were destroyed by fire. The court said:

"If the records insured kept, viz. inventory taken in January, 1914, invoices, ledger, cash

book (from January 1, 1914, to October 16, 1914) and the succeeding cash book had been preserved by being kept in the safe at night, he would have saved from the fire a sufficient record to have met the exactions of this feature of his contract."

In London Assurance Corp. v. Poole, 212 Ala. 109, 101 So. 831, the authorities were reviewed, what was there said supports the view that the inventory and books here involved were a substantial compliance with the iron-safe clause.

It appears plaintiff had no experience in such matters, and the inventory was taken and books kept upon the advice of the insurance agent who inspected the stock, wrote the policy, and called his attention to its provisions in this regard. Only about seven weeks elapsed from the issuance of the policy until the loss by fire. The record shows total sales of little more than $400 during this time.

The inventory and books, aided by explanation of the method of keeping them, furnished information whereby any intelligent person could promptly ascertain, without other parol information, the quantum and value of the stock and the extent of the loss. This is the primary purpose of the provision. Such documents are merely the declarations of the insured kept in course of business. As a preventive of fraud, the insurer has the benefit of a contemporaneous record which good business suggests the insured shall keep for his own purposes, and not leave open to conjecture the amount of the loss after it occurs and when the interest of the insured tempts to exaggerate claims.

[5] The genuineness of the books themselves, whether they were in fact kept as claimed, the correctness of them, if genuine, the honest conduct of the business in usual course, and whether the stock was corruptly and fraudulently burned, were all issues of fact properly submitted to the jury upon evidence sharply in conflict on some points. We cannot declare as matter of law the insurance was forfeited for breach of the iron-safe clause. Pennsylvania Fire Ins. Co. v. Malone (Ala. Sup.) 115 So. 156; [1] Hanover Fire Ins.

[1] Ante, p. 169.

Co. v. Wood, 213 Ala. 132, 104 So. 224, 39 A. L. R. 1436; London Assurance Corp. v. Poole, 212 Ala. 109, 101 So. 831; Insurance Co. of North America v. Williams, 200 Ala. 681, 77 So. 159; Fidelity Phœnix Ins. Co. v. Williams, 200 Ala. 678, 77 So. 156; Queen Ins. Co. v. Vines, 174 Ala. 568, 57 So. 444; Day v. Home Ins. Co., 177 Ala. 600, 58 So. 549, 40 L. R. A. (N. S.) 652; Georgia Home Ins. Co. v. Allen, 119 Ala. 436, 24 So. 399.

[6] The court correctly instructed the jury that the burden was on defendant to show forfeiture of the policy by breach of a condition subsequent of this character. 26 C. J. p. 516.

[7, 8] There was evidence that Mrs. Tadlock, wife of the owner of the store which was burned, stated in the presence of the crowd on the night of the fire that old Perdue burned it, and, if he did not put it back or pay for it, they would beat him out of the insurance. Mrs. Tadlock appeared as a witness for defendant. Plaintiff's counsel in argument said: "No doubt, the insurance company heard of those statements by Mrs. Tadlock and took advantage of it." There was some evidence of an unfriendly attitude of the adjuster at the time he examined the books and inventory.

The argument complained of does not purport to state a fact, but rather an inference. Rather liberal rules must be allowed counsel in drawing inferences before the jury. The statement here is not so manifestly foreign to the case as to warrant a reversal therefor, however improbable any imputation of bad faith on the part of the defendant company. The good faith of both parties and their witnesses was a matter open to the inquiry of the jury in ascertaining the truth of the case.

[9] In the face of wide conflict in the testimony, many witnesses on each side giving opposing evidence on material matters, the action of the trial court in refusing a new trial upon the ground that it was contrary to the great weight of the evidence will not be disturbed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.