(132 So. 27)

# INSURANCE CO. OF NORTH AMERICA v. MILES.

## 5 Div. 60.

Supreme Court of Alabama.

Jan. 15, 1931.

Coleman, Coleman, Spain & Stewart, of Birmingham, for appellant.

J. W. Strother, of Dadeville, and J. Sanford Mullins, of Alexander City, for appellee.

THOMAS, J.

The suit is upon a policy of fire insurance on stock of merchandise.

Plaintiff's cause of action is stated in one count in Code form that claims damages for the breach of the conditions of a fire insurance policy. Appellant's defenses are set up in six pleas—the general issue, and special pleas to be indicated.

The pleas allege that the appellee did not take itemized inventories of stock on hand, as required by the terms of the policy; did not produce the inventories required by the provisions of the insurance contract for the inspection of the defendant; did not keep a set of books which plainly present a complete record of the business transacted, including purchases, sales, and shipments for cash and credit, from the date of the inventory, as provided in the iron safe clause of the policy; that appellee failed to produce the books and inventories, as required by the iron safe warranty of the policy, for the inspection of appellant; did not keep his books and inventories, as required by the terms of the policy, secured or located in the fireproof safe at night and at all times when the building mentioned in the policy sued on was not actually open for business, and did not keep same in a place not exposed to fire which would destroy the building; that the assured knowingly falsely swore, in a written proof of loss, that the stock of merchandise as destroyed by fire was, to wit, a sum more than the actual value of the stock as destroyed.

It should be stated generally that appellee operated a general store at Dadeville, Ala.; had $17,000 of fire insurance on his stock of merchandise which was destroyed by fire

about 1 a. m. on the morning of May 28, 1929, and that a proof of loss was prepared and mailed to the company on June 1, 1929; that he kept a fireproof safe in which a part of his records required to be kept were placed on the night of the fire and thereby preserved; that the fire destroyed everything in the store; in January before the fire business had dropped off, and appellee had cut his help or number of employees; that then there were a large number and amounts of judgments against him, and he was being pushed by creditors. As to this plaintiff testified:

"I had been getting behind with my store account, perhaps a year and a half, and there was a great number of judgments against me, and most of the payments that I was making all this time were being paid through lawyers who had claims against me, and I had an expensive family. My family lived out of the store. * * * I don't know how many thousands of judgments were outstanding against me when this fire took place, I don't know the exact amount."

Three days before the fire, plaintiff had put on a "Wonder Working, Trade Compelling Bargain Carnival," and during the three days which the sale was conducted he sold $534.85 worth of merchandise, and paid the salesman who put on the sale $205 of that amount for his services.

Mr. Miles produced an inventory for 1929. It is exhibited in the record. What purported to be a record of sales for 1927, 1928, and 1929 is likewise exhibited. He produced what purported to be a record of merchandise purchased in the years 1927, 1928, and 1929, and this is shown as an exhibit; and also produced a number of loose sheets or itemized lists which he claimed to have been the basis of the 1929 inventory; and these are likewise exhibited in the record. Some invoices for the year 1929 were produced which are shown in the evidence. Plaintiff testified that he had made an inventory in 1928, but that this was left out of the safe and burned; that he kept a ledger that was likewise left out of the safe and destroyed; that most of his invoices were left out of the safe and destroyed by the fire; and that his record of cash sales was that of the total amount of cash taken in for any particular day, which included both the amount received from cash sales and the amount collected on outstanding credit accounts of the cash and credit business he did.

■ The foregoing pleas alleged failure of compliance with the iron safe clause. The decisions define the contract duties in this respect, and need not be repeated. Pennsylvania Fire Ins. Co. v. Malone, 217 Ala. 168, 172, 115 So. 156, 56 A. L. R. 1075; Hanover Fire Ins. Co. v. Wood, 213 Ala. 134, 104 So. 224, 39 A. L. R. 1436; Day v. Home Insurance Co., 177 Ala. 600, 58 So. 549, 40 L. R. A.

(N. S.) 652; Insurance Co. of North America v. Williams, 200 Ala. 681, 77 So. 159; Home Ins. Co. of New York v. Williams (C. C. A.) 237 F. 171; Georgia Home Ins. Co. v. Allen, 128 Ala. 451, 30 So. 537. The records kept and exhibited on demand, per the contract agreement, must be sufficient in themselves to give a reasonably and substantially correct history of assured's business to the date of destruction, unaided by parol evidence otherwise than to indicate the system of bookkeeping employed by assured. Insurance Co. of North America v. Williams; Hanover Fire Ins. Co. v. Wood, supra. And failure as to this is a breach of the promissory warranty of the policy, which will prevent recovery, by reason of failure to keep books and to produce inventories required, yearly and the last preceding inventory as required by the terms of the policy. Pennsylvania Fire Ins. Co. v. Malone, supra.

■ The plaintiff brought into court what he said were "all the books (he) I (had) have ever produced," and testified that his "ledger got burned up"; it was "outside the safe" in plaintiff's "office at the central part of the store." He further testified as follows:

"There are quite a few of my invoices that are not here. I kept part of them in a file, and that file happened to be out of the safe that day. I had a small safe to keep most of my valuable papers, and the invoices were lost and destroyed. Fire destroyed them. These books I have here are all the books I have, my ledger got burned up. It happened to be outside the safe. * * * I took an inventory in 1928. It was out of the safe. I just told you I had a small safe and kept most of my valuable papers in front, and I left that inventory (the 1928 inventory) out, and it burned up. It was taken in the early part of the year 1928, after the first of the year. I know I just taken it after the first of January. Sometimes I take it between Christmas and New Year's, sometimes right after the first, I left that inventory and my ledger and quite a few of my invoices out, and they were all destroyed. * * *

"I did all my bookkeeping, kept the store account, kept the merchandise receipt book, and I didn't let anybody have anything to do with the work on my books. I had other clerks, but that was my private affair. It has been and always was ever since I was in business here. * * * My record of cash received would show what I collected on my accounts, and what I collected in cash in the store. It all went into the day's sales, and that record (of cash sales) is the only record we kept. Mr. Jinks didn't do a different system of collecting. I would make out the bills myself, and hand them to him. My record mark Sales 1927–1928 'Day Book' is the record. There is only one book of that. My

record showing receipts of merchandise that somebody has changed about in places is marked 'Invoices, 1927.' That is the record I kept of that. I don't remember if I kept the freight and express in there, but it wasn't my ledger. That does not mean to say that I had to keep it there. My ledger might have had something else that was debited."

Testifying further, plaintiff said:

"I fixed this inventory book right around January the 10th. That item, accounts good $1,322.21 were open accounts I considered good, and I collected a good part of that before the fire. My sales for 1928 were $41,-148.57. That information as to the $8,421.97 came from the day book and inventory. * * * I kept those figures in the safe, and this inventory is copied largely from those loose sheets (shown in the record just before the inventory) and I destroyed the other part, the paste board. They were strips about 18 inches long that come in piece goods. I took some of this inventory myself, I am not sure. * * *

"I couldn't tell exactly what part of the inventory I put the shoes in. I took the inventory and had them in my office when I was making this list (proof of loss). My office was near the middle of the store, and those that were in the boxes I put in the list from there. * * *

"This merchandise accounts show all the merchandise I received, I think, and this book showing sales shows my entire receipts of cash. The cash came from both cash and credit sales, and these papers (the memoranda shown before the inventory) are all the record of inventory that I have other than the inventory itself."

It is indicated by the evidence that plaintiff had failed to substantially comply with the contract provisions as to keeping and producing inventories as required by the contract and our decisions. London Assur. Corp. v. Poole, 212 Ala. 109, 101 So. 831.

In some aspects this is a stronger case than that of Pennsylvania Fire Ins. Co. v. Malone, supra. Here the prior inventory for 1928 was destroyed by fire and was not produced as required by the terms of the policy; the same being left out of the iron safe on the night of the fire and was destroyed by fire as per plaintiff's own testimony. Pennsylvania Fire Ins. Co. v. Malone, 217 Ala. 168, 115 So. 156, 56 A. L. R. 1075.

The affirmative charges requested should have been given.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.