160 So. 225

**DEAL v. CAMDEN FIRE INS. CO.**

4 Div. 804.

Supreme Court of Alabama.

March 21, 1935.

A. Whaley, of Andalusia, for appellant.

A. R. Powell, of Andalusia, and Farmer, Merrill & Farmer, of Dothan, for appellee.

GARDNER, Justice.

Plaintiff, conducting a mercantile business in Opp, Ala., lost (on January 7, 1933) her stock of goods and fixtures by fire, all insured by defendant company, and a recovery was had in this suit for the insured amount as to the fixtures. But, as to the stock of goods, the trial court gave for defendant the affirmative charge, and from the judgment rendered, claimed as insufficient in amount, plaintiff appeals.

Count 1 sought to recover for the loss of the stock of goods, and count 2, as amended, was for both the merchandise and the fixtures, while the third count was for the fixtures only. The defense as to all counts rested upon the theory that plaintiff willfully burned the property, or had it done by some one acting under her direction.

In returning a verdict for the fixtures, the jury determined this issue in plaintiff's favor. As to the merchandise, the defendant insisted there was a breach of the "Iron Safe Clause," as it is generally called, and upon conclusion of the trial the court let it be known that, in his opinion, under the evidence, this defense had been conclusively established, and he would so instruct the jury.

Thereupon, and before the jury retired, plaintiff's counsel moved for a nonsuit as to counts 1 and 2, with bill of exceptions, to which the court replied a nonsuit as to the whole case would of course be granted if desired, but that the statute as to nonsuit with bill of exceptions made no provision for a nonsuit of a part only of a case or as to only certain counts. The motion was therefore denied and a verdict subsequently returned in plaintiff's favor for the insured value of the fixtures.

The ruling was correct. A voluntary nonsuit is in fact an abandonment of his cause by the plaintiff, who thereby allows a judgment for costs to be entered against him. 18 Corpus Juris, 1147. At common law the one essential of a nonsuit was the abandonment of the case by the plaintiff, a declaration by the court that the plaintiff had made default in appearance at the trial to prosecute his suit. Danforth v. Danforth, 40 Nev. 435, 166 P. 927; 18 Corpus Juris, 1147.

This necessarily contemplates that the cause is then withdrawn in its entirety. Plaintiff of course had the right to amend the complaint by striking out these counts, or withdrawing them, which in Southern Railway Co. v. McEntire, 169 Ala. 42, 53 So. 158, was held to be in effect the same as having them stricken, and a like result as a nonsuit, so far as these counts were concerned, would have followed. Such was the holding in Southern Railway Co. v. McEntire, supra.

The statute (section 6431, Code 1923) clearly contemplates that a voluntary nonsuit, with the right of review in the appellate courts, carried with it the entire cause—a final disposition of the cause in the trial court with taxation of costs against the plaintiff. A pointed illustration is found in the case of Martin v. Alabama Power Co., 208 Ala. 212, 94 So. 76. But we need not pursue the discussion further. There was no error in denying plaintiff's motion.

Considering the cause upon its merits, we are persuaded also the affirmative charge for defendant was properly given as to the loss of the merchandise by fire.

The policy contained the following covenants:

"The following covenant and warranty is hereby made a part of this policy:

"1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year and, unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

"2. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continuance of this policy.

"3. The assured will keep such books and inventory, and also, the last preceding inventory, if such has been taken, securely locked in a fire proof safe at night, and at all times when the premises mentioned in this policy are not actually open for business; or, failing in this, the assured will keep such

books and inventories in some place not exposed to fire which would destroy the property hereby insured.

"In the event of failure to produce such set of books all inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

Pretermitting a consideration of the matter of sufficiency of the inventory, also here argued, the conclusion may well be rested upon the insistence that plaintiff did not keep such a set of books as to meet the above-noted covenant requirements. "The object of the iron-safe clause is to enable the insurer, in case of a fire, to arrive more accurately than he otherwise would be able to do, at the exact amount of the loss." Georgia Home Ins. Co. v. Allen, 119 Ala. 436, 24 So. 399, 405.

■■■ The requirements of the policy in this respect—called by our decisions conditions subsequent—are held to be entirely reasonable and binding upon the assured though, a substantial compliance therewith will suffice. Still the books must show with reasonable certainty a complete record of the insured's business transactions, including purchases and sales for cash or credit. No particular mode of keeping books is required if the amount and value of the goods destroyed may be ascertained therefrom with reasonable cer·tainty by a person of ordinary intelligence, with the assistance of those who understand the system with which the books are kept, but otherwise unaided by parol. "The law requires no particular form of bookkeeping; but it seems obvious that there should be something that perpetuates in intelligble and reasonably accessible form the memory of things as they were understood at their date." Hanover Fire Ins. Co. v. Wood, 213 Ala. 132, 104 So. 224, 226, 39 A. L. R. 1436; Insurance Co. of North America v. Williams, 200 Ala. 681, 77 So. 159; London Assurance Corporation v. Poole, 212 Ala. 109, 101 So. 831; Georgia Home Ins. Co. v. Allen, supra; Chamberlain v. Shawnee Fire Ins. Co., 177 Ala. 516, 58 So. 267.

"The records kept and exhibited on demand, per the contract agreement, must be sufficient in themselves to give a reasonably and substantially correct history of assured's business to the date of destruction, unaided by parol evidence otherwise than to indicate the system of bookkeeping employed by assured." Insurance Co. of North America v. Miles, 222 Ala. 233, 132 So. 27, 28.

■ A brief reference to the proof will suffice to show that as a whole the method pursued by plaintiff as to any permanent record kept of the business failed to measure up to the standard of substantial compliance with the policy covenants established by the above-noted authorities. ·

Since her employment by plaintiff in July, 1932, Miss Harrelson has served as bookkeeper, converting plaintiff's books into a double entry system, copying the books which included the inventories. This was finished August 10, 1932, and thereafter she ceased to do any work on the books until September 1st, when she posted the books for the month of August. And this continued to the date of the fire; that is, she would go on the first of each month and post the books for the preceding month. This was done from memoranda slips which were placed by plaintiff on a file. These slips were not preserved.

At the time of the fire a bargain sale had been in progress several days. As previously noted, the date of the fire was the night of January 7, 1933. And illustrative of the method pursued as to posting the books only once a month—at the ·end of each month— the books preserved by plaintiff show no entries whatever for the last five days, that is, from the 2nd to the 7th of January: this, of course, for the reason, under the system, there was to be no posting of the books until February 1st. Thus during an important period in plaintiff's business there were no entries at all, no slips preserved, and no record evidence of the business whatever, for the last five days.

It appears from the proof that during 1931 plaintiff did a considerable credit business, and, while the credit sales were not so large for 1932, yet she did continue to do a credit business. But it was done solely on memoranda slips, not preserved, and the books disclose no credit sales whatever.

As to merchandise added to the stock of goods, the books give no description, merely the name of the company, the date of the bill, and total amount. This we note only by way of illustration of the rather loose system employed, and not hereof controlling importance.

Plaintiff offered a number of invoices. Whether they cover all purchases, or what part, is left uncertain, and the exigencies of this case call for no conclusion thereon. Hanover Fire Ins. Co. v. Wood, 213 Ala. 132, 104 So. 224, 39 A. L. R. 1436; National-Ben

Franklin Fire Ins. Co. v. Snider, 222 Ala. 329, 132 So. 23.

What has been said suffices to show, in the light of the cited authorities, that plaintiff's system of bookkeeping did not meet the covenant requirements of the policy and that the undisputed proof justified the court's action.

We have not overlooked reference in brief to evidence of plaintiff tending to show all the books that survived the fire were not in evidence, and were once in defendant's possession. But, reduced to the last analysis, the insistence appears to have relation to two old books, prior to Miss Harrelson's work, and which in no event could materially affect the result.

Nor have we overlooked the case of London Assurance Corporation v. Poole, 212 Ala. 109, 101 So. 831, cited by plaintiff. But the facts of that case bear no analogy to those here presented, and nothing therein militates against the conclusion here.

No reversible error appearing, the judgment will stand affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.